CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
Bonnie L. Pollack, Esq. (BP 3711)
Attorneys for Ridgewood Savings Bank

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

Pjeter Realty, Inc.

　　　　　　　　　　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　Case No. 13-23894 (RDD)

　　　　　　　Debtor.
-----------------------------------------------------------X

## OPPOSITION TO DEBTOR'S MOTION FOR USE OF CASH COLLATERAL AND IN SUPPORT OF RIDGEWOOD SAVINGS BANK'S CROSS-MOTION FOR RELIEF FROM AUTOMATIC STAY

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

Ridgewood Savings Bank ("Ridgewood"), by and through its counsel Cullen and Dykman LLP, as and for its opposition to the Debtor's motion for use of cash collateral and in support of its cross-motion for relief from the automatic stay, respectfully alleges as follows:

### INTRODUCTION

1. On November 18, 2013 (the "Petition Date"), Pjeter Realty, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York.

2. No trustee, examiner or creditor's committee has been appointed in the Debtor's case. The Debtor remains in possession of its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On December 2, 2013, the Debtor filed a motion for authorization to use cash collateral (the "Cash Collateral Motion"). On December 27, 2013, Ridgewood filed a cross-motion seeking relief from the automatic stay (the "Automatic Stay Motion"). For the reasons set forth herein, the Cash Collateral Motion should be denied and the Automatic Stay Motion should be granted.

## BACKGROUND

4. Ridgewood holds a first mortgage against the Debtor's property located at 600 5th Avenue, Pelham, New York (the "Property") pursuant to a Mortgage Consolidation, Modification and Security Agreement and a Mortgage, Security Agreement and Assignment of Leases and Rents (the "Mortgage") dated September 19, 2008. The Mortgage secures the Debtor's obligations to Ridgewood in the original principal amount of $735,000 pursuant to an Amended, Consolidated and Restated Mortgage Note also dated September 19, 2008 (the "Note"). Copies of the Note and Mortgage are annexed hereto as Exhibit "A".

5. Pursuant to the Note and Mortgage (the "Loan Documents"), the rents generated from the Property (the "Rents") were transferred and assigned to Ridgewood and Ridgewood was granted a security interest in and to the Rents.

6. Prior to the Petition Date, on April 1, 2012, the Debtor defaulted on its obligations under the Loan Documents. On or about August 23, 2012, Ridgewood commenced an action to foreclose its Mortgage against the Property in the Supreme Court, Westchester County (the "Foreclosure Action").

7. By Order dated April 22, 2013 entered in the Foreclosure Action, Joseph A. Maria, Esq. was appointed receiver of the Property (the "Receiver"). The Receiver had not taken

2

possession and control of the Property or collected rents or otherwise maintained the Property since his appointment.

8. A judgment was entered in the Foreclosure Action on October 25, 2013. The Debtor filed its bankruptcy case before the scheduled foreclosure sale.

9. Shortly after the Petition Date, on November 21, 2013, and pursuant to the request of Debtor's counsel, counsel for the undersigned sent to Debtor's counsel a draft proposed cash collateral agreement. **Although the draft cash collateral agreement was sent to Debtor's counsel more than five weeks ago, Debtor's counsel has still not provided any comments to the cash collateral agreement, nor has Debtor's counsel responded in any manner to the undersigned's inquiries regarding the status of the cash collateral agreement.** Although Ridgewood was originally willing to enter into a cash collateral agreement upon certain terms and conditions, the Debtor disregarded the proposed cash collateral agreement without any negotiation whatsoever, and instead filed the Cash Collateral Motion.

10. For the reasons set forth below, the Cash Collateral Motion should be denied and the Automatic Stay Motion should be granted. In the event that the Court is inclined to permit the Debtor to use cash collateral despite the many reasons why such relief should not be granted, it is submitted that the Debtor should be required to enter into the form of cash collateral agreement proposed by Ridgewood as only then will Ridgewood be adequately protected in this case.

## THE USE OF CASH COLLATERAL
## SHOULD BE DENIED AND RELIEF FROM
## THE AUTOMATIC STAY SHOULD BE GRANTED

11.     In the Cash Collateral Motion, the Debtor seeks to use the Rents generated from the Property and, as adequate protection, pay Ridgewood $4,000 per month with simply replacement liens as adequate protection. It also proposes to carve-out from Ridgewood's liens an amount necessary to pay U.S. Trustee fees and Debtor's professional fees of up to $10,000. The Debtor submits that there is an equity cushion in the Property with which Ridgewood will be adequately protected. Contrary to the allegations in the Cash Collateral Motion, the proposed adequate protection is insufficient to protect Ridgewood, there is no equity cushion, the carve-out cannot be permitted, and the Debtor has no prospect of reorganization. Use of cash collateral should therefore be denied and the automatic stay should be vacated to permit Ridgewood to continue with its Foreclosure Action.

12.     The Debtor has absolutely no ability to provide adequate protection to Ridgewood. There is no equity cushion for providing adequate protection, nor does the Debtor have any unencumbered property in which to grant Ridgewood a replacement lien. Moreover, the Debtor does not have the ability to make appropriate periodic payments to Ridgewood, and the proposed payment of $4,000 is inadequate to constitute protection against the diminution in value of Ridgewood's collateral.

13.     The Debtor's proposed cash collateral budget, annexed to the Cash Collateral Motion as Exhibit C thereto, shows total revenue of $5,500 per month. It should be noted that it is unclear as to when the leases identified in the Debtor's budget expire. It is quite possible, for instance, that the revenues identified in the budget will not exist going forward. Even assuming, *arguendo*, that the total revenues of $5,500 per month will last in perpetuity, the Debtor has no

4

ability to make debt service payments to Ridgewood. The proposed payment of $4,000 constitutes approximately ½ of the monthly payments required by the Debtor under the parties' Loan Documents, which amounts to $7,829 per month. Indeed, the proposed payment is less than the interest and tax escrow component alone, which amounts to $6,911 per month. In granting the use of cash collateral, courts will typically require that as adequate protection, a debtor at the very least make payments to their lender in an amount which equals the interest and tax escrow component of a debtor's monthly payment. Based on the Debtor's proposed budget, the Debtor has no ability to make such payments. The inability to pay interest and escrow to Ridgewood clearly denotes a lack of adequate protection.

14. Moreover, there is no equity in the Property with which to provide adequate protection. Although in the Cash Collateral Motion, the Debtor *concludes* that the value of the Property is $1,000,000, the Debtor has provided no evidentiary support for that valuation. Indeed, the Debtor lists the value of the Property at $900,000 on its schedules so it is curious as to what the Debtor truly believes the value of the Property to be. Despite the Debtor's conclusions that the Property is valued at somewhere between $900,000 and $1,000,000, Ridgewood commissioned an appraisal of the Property as of August 20, 2013 which valued the Property at only $800,000. See, Exhibit "B". However, Ridgewood's claim as of the Petition Date amounts to $935,569.91. See, Exhibit "C" (without exhibits). Thus, based upon the appraisal annexed hereto and, indeed, the Debtor's initial valuation of the Property in its schedules, there is no equity in the Property. Nor does the Debtor have any other Property with which to provide a lien to Ridgewood as adequate protection.

15. Additionally, the Debtor does not have an ability to operate in chapter 11. The budget makes evident that the Debtor operates at a loss if it were required to pay debt service

5

payments and certainly if it were to be required to pay chapter 11 administrative expenses. The Debtor's budget expenses do not account for monthly payments to Ridgewood under its Note and Mortgage but, rather, a payment of only $4,000 to the bank. In order for the Debtor to be able to reorganize, the Debtor would be required to make its full debt service payments to Ridgewood on an ongoing basis. Since those payments are approximately $4,000 more per month than are included in the Debtor's budget, it is clear that the Debtor does not have the financial wherewithal to comply with those obligations. The Debtor therefore has absolutely no ability to pay its operating expenses, debt service payments and chapter 11 administrative costs and will be administratively insolvent if this case were to continue.

16. Finally, the Debtor unequivocally has no ability to confirm a plan over Ridgewood's objection. As set forth above, the Debtor has no ability to pay debt service payments. Furthermore, based on a property value of $800,000 (the only evidence of value), Ridgewood will have a deficiency claim of approximately $136,000. However, pursuant to the Debtor's schedules, the Debtor has only one unsecured creditor, Con Edison, which has filed a claim in the amount of $18,423.20. Additionally, the New York State Department of Tax and Finance filed an unsecured claim in the amount of $238.79. See, Exhibit "D". Thus, even if those two creditors voted their claims in favor of a plan, the Debtor would be unable to obtain 2/3 in amount of claims voting in favor of a plan above Ridgewood's objection and the Debtor would not have an impaired accepting class voting in favor of a plan.[1] Since the Debtor does not have a plan that is confirmable without Ridgewood's consent, the use of cash collateral should be

---

[1] Although the Debtor's bar date has not yet expired, it is unlikely that any appreciable claims will be filed since the Debtor does not list any other creditors on its matrix and in fact did not serve any other creditors with the Cash Collateral Motion, only tenants. See, Exhibit "E".

6

denied, and the stay should instead be vacated to permit Ridgewood to continue with its Foreclosure Action with respect to the Property.

17. In the event the Court is inclined to grant the Debtor's Cash Collateral Motion notwithstanding the numerous reasons why it should not, it is submitted that the Debtor should be required to execute the proposed cash collateral order sent to the Debtor by Ridgewood at the beginning of this case more than five weeks ago which include appropriate defaults and remedies therefor, and which does not include a carve-out for Debtor's counsel (but does include a carve-out for a Chapter 7 Trustee should one be appointed as well as for U.S. Trustee fees). Debtor's counsel took this case on its own free will, knowing that the Debtor's revenues were insufficient to pay its expenses and its assets insufficient to pay its debts. The burden of the paying counsel should not be foisted onto Ridgewood but should be borne by the Debtor and its counsel.

## CONCLUSION

18. As set forth above, the Debtor has no ability to provide adequate protection to Ridgewood. This is especially true since there is no equity in the Property and the Debtor has no ability whatsoever to reorganize.

19. While Ridgewood is mindful that the Debtor wants to save its Property, some properties just cannot be saved and some cases just cannot be continued. This is one of them. Given the lack of equity, the lack of adequate protection, lack of adequate cash flow and the lack of Debtor's ability to confirm a plan absent Ridgewood's consent, Ridgewood respectfully submits that the Debtor's motion for the use of cash collateral must be denied and that Ridgewood should be granted relief from the automatic stay.

WHEREFORE, for the reasons set forth herein, the Court should deny the Cash Collateral Motion, and should grant Ridgewood relief from the automatic stay and such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
December 27, 2013

        CULLEN AND DYKMAN LLP

        By: s/ Bonnie L. Pollack
        Matthew G. Roseman, Esq.
        Bonnie L. Pollack, Esq.
        Attorneys for Ridgewood Savings Bank
        100 Quentin Roosevelt Boulevard
        Garden City, New York 11530
        (516) 357-3700