CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY  11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for Ridgewood Savings Bank

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In Re:

                                                    Chapter 11
Pjetr Realty, Inc.,                                 Case No. 13-23894 (RDD)

                          Debtor.
----------------------------------------------------------X

## OBJECTION TO APPROVAL OF
## DEBTOR'S DISCLOSURE STATEMENT

To the Honorable Robert D. Drain, United States Bankruptcy Judge:

Ridgewood Savings Bank ("Ridgewood"), by and through its attorneys Cullen and

Dykman LLP, as and for its objection to the adequacy of the Debtor's Disclosure Statement filed

in the above matter, respectfully alleges as follows:

### INTRODUCTION AND BACKGROUND

1.      On November 18, 2014 (the "Petition Date"), Pjetr Realty, Inc. (the "Debtor")

filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the

"Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New

York.

2.      Ridgewood holds a first mortgage against the Debtor's property located at 600 5th

Avenue, Pelham, New York (the "Property") pursuant to a Mortgage Consolidation,

Modification and Security Agreement and a Mortgage, Security Agreement and Assignment of

Leases and Rents (the "Mortgage") dated September 19, 2008. The Mortgage secures the

Debtor's obligations to Ridgewood in the original principal amount of $735,000 pursuant to an

Amended, Consolidated and Restated Mortgage Note also dated September 19, 2008 (the

"Note"; together with the Mortgage, the "Loan Documents").

       3.      Prior to the Petition Date, on April 1, 2012 the Debtor defaulted on its obligations

under the Loan Documents. On or about August 23, 2012 Ridgewood commenced an action to

foreclosure its Mortgage against the Property and a judgment was entered in the foreclosure

action on October 25, 2013. The Debtor filed its bankruptcy case before the scheduled

foreclosure sale.

       4.      As of the Petition Date, Ridgewood was owed $935,569.91 by the Debtor and

filed a secured claim to that effect on November 22, 2013.

       5.      On or about May 15, 2014, the Debtor filed a Chapter 11 Plan of Reorganization

(the "Plan"), together with a Disclosure Statement in connection therewith (the "Disclosure

Statement"). Because the Debtor's exclusive right to propose a plan expired, on May 27, 2014

Ridgewood filed a competing Chapter 11 Plan of Liquidation and Disclosure Statement in

connection therewith. The hearing on the adequacy of both Disclosure Statements are being held

simultaneously.

       6.      As set forth below, the Disclosure Statement filed by the Debtor describes an

unconfirmable Plan and should therefore not be approved. Additionally, the Debtor's Disclosure

Statement does not provide adequate information and must therefore be denied on that basis as

well.

## THE DISCLOSURE STATEMENT
## DOES NOT PROVIDE ADEQUATE INFORMATION AND
## DESCRIBES AN UNCONFIRMABLE PLAN

7.      Section 1125 of the Bankruptcy Code requires that a disclosure statement provide

"adequate information", defined as "information of a kind, and in sufficient detail, as far as is

reasonably practicable in light of the nature and history of the debtor and the condition of the

debtor's books and records, . . . to enable . . . a hypothetical investor of the relevant class to make

an informed judgment about the plan . . ." 11 U.S.C. §1125(a).  Case law has held that "[t]he

Bankruptcy Code requires a debtor to engage in full and fair disclosure during the reorganization

process."  In re Momentum Manufacturing Corp., 25 F.3d 1132, 1136 (2d Cir. 1994).  The

standard for adequate disclosure is flexible and is determined on a case-by-case basis.  See, e.g.,

In re Aspen Limousine Service, Inc., 193 B.R. 325, 334 (D. Colo. 1996); In re Copy Crafters

Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988).  The Bankruptcy Court enjoys a

wide amount of latitude in determining what constitutes adequate information in a disclosure

statement.  See, Kirk v. Texaco, Inc., 82 B.R. 678, 681 (S.D.N.Y. 1988) (holding that "Factual

findings of the bankruptcy judge on 'core matters' such as the adequacy of disclosure under

section 1125(a) should be set aside by the district court only if those findings represent an abuse

of discretion").  However, when the disclosure is wholly inadequate, the court has a duty to

reject the disclosure statement to protect the creditors and the estate.

8.      Moreover, "disapproval of the adequacy of a disclosure statement may sometimes

be appropriate where it describes a plan of reorganization which is so fatally flawed that

confirmation is impossible."  In re Cardinal Congregate I, 121B.R. 760, 764 (Bankr. S.D. Ohio

1990), citing In re Monroe Well Service, Inc., 80 B.R. 324 (Bankr. E.D. Pa. 1987); In re Pecht,

57 B.R. 137 (Bankr. E.D. Va. 1986); In re Kehn Ranch, Inc., 41 B.R. 832 (Bankr. D.S.D. 1984).

3

9.      In this case, the Disclosure Statement is inadequate in several respects and also describes a patently unconfirmable Plan and should therefore not be approved by the Court.

A.    The Plan is Patently Unconfirmable

10.      The Plan as it relates to Ridgewood's secured claim is premised on the reinstatement of the Mortgage by way of a cure of the arrears under the Loan Documents (amounting to at least $283,000) and continued payments under the Loan Documents in accordance with their terms thereafter.  The Debtor asserts in the Plan and Disclosure Statement that Ridgewood is unimpaired and not entitled to vote on the Plan as a result thereof.  Although the Plan states that the arrears will be cured on the later of the Effective Date or the date that "a secured claim" becomes an allowed secured claim (page 11, section III(B)(1)), the Disclosure Statement paints a different picture entirely.  In section I(b), at page 4 of the Disclosure Statement, the Debtor states "the Debtor's Plan is predicated on the Reinstatement of the note to Ridgewood.  The debtor intends to reinstate the note by satisfying the arrears.  Delores has committed to paying the arrears over time with personal funds.  She is selling other property that she owns and will utilize the proceeds to satisfy the arrears.  The Debtor will make regular monthly payments to Ridgewood and satisfy all amounts due under the note once reinstated. Delores will make up any shortfall." (emphasis added) Thus, according to the Debtor, the arrears will not be cured on the Effective Date of the Plan, but, rather, at some unspecified time in the future once sufficient funds have been amassed by the Debtor's principal to do so, and the payments under the Loan Documents will not occur until reinstated.  This is improper as in order to effectuate a cure of arrears under the Plan, the arrears must be paid on the Effective Date, not at some unspecified time thereafter.

4

11.     Section 1124(2) of the Bankruptcy Code requires that curing of a default occur as of the effective date of a plan because the creditor is impaired until the time that the default is cured. See, e.g., In re Holthoff, 58 B.R. 216, 219 (Bankr. E.D. Ark. 1985); In re Jones, 32 B.R. 951, 957 (Bankr. D. Utah 1983); In re Otero Mills, Inc., 31 B.R. 185, 186 (Bankr. D. N.M. 1983).  In Otero Mills, the Debtor proposed to cure the default and reinstate the debt at such time as it sold property.  The Court found that to be improper under the Bankruptcy Code as such payments were not being made on the effective date of the plan.  Otero Mills, 31 B.R. at 186. Thus, paying the arrears after the Effective Date will not satisfy the requirements of the Bankruptcy Code, rendering the Plan unconfirmable.  Moreover, the Debtor cannot simply move the Effective Date (presently 14 days after confirmation) to a date which is at some unspecified time thereafter.  The effective date of a plan should be placed on or close to the date of entry of a confirmation order and have some reasonable relationship to the confirmation date.  See, e.g., Continental Sec. Corp. v. Shenandoah Nursing Home Pshp., 188 B.R. 205, 217 (W.D.Va. 1995); Jones, 32 B.R. at 959, n. 13.

12.     Moreover, even if the Debtor were to make clear in the Plan and Disclosure Statement that the arrears will be cured on the Effective Date, the Plan is not feasible, a requirement of section 1129(a)(11) of the Bankruptcy Code.  If the Court found the Plan otherwise confirmable, as set forth above the Debtor would be required to make payment of at least $283,000 to Ridgewood on the Effective Date.  However, pursuant to the Debtor's last operating report, as of June 19, 2014 the Debtor appears to have $0.00 in its bank account, and will be unable to make the payments required on the Effective Date.  In fact, by the Debtor's own admission in the Disclosure Statement, neither it nor its principal will have the funds necessary to make the payments required under the Plan, if at all, until some time after the

Effective Date of the Plan. Importantly, every proposal made by the Debtor to Ridgewood to date requires a payout of the arrears. The Debtor's Plan is therefore not feasible, cannot be confirmed and the Disclosure Statement should be denied on that basis.

13.    It is also unclear as to whether the Plan is feasible even if the Debtor is able to make the cure payment in the future (which it could not).   All that the Disclosure Statement provides is that the Debtor's principal will pay arrears with "personal funds" and that she is "selling other property" to satisfy the arrears. However, there is absolutely no disclosure or documentation as to the principal's financial wherewithal or funds available to the principal at this time; also, while the principal proposes to sell other property, there is no disclosure as the nature of those properties, the value of those properties including appraisals, whether or not the properties have been listed on the market and the estimated time frame for selling those properties, the amounts of any mortgages outstanding in connection with sold properties, and whether use of those properties to make payments to Ridgewood would violate those mortgages thereby throwing other properties into default. The Debtor's proposal in the Plan is nothing more than visionary.

14.    In addition, the ability of the Debtor to make ongoing payments under the Loan Documents is not feasible. By the Debtor's own admission, the rent roll is insufficient to pay the amounts due to Ridgewood under the Loan Documents. The Debtor's cash flow projection included in its May 2014 operating report, annexed hereto as Exhibit "A" shows that even with a higher rent being collected from the restaurant operated at the Property, there is still a shortfall in the ability to pay expenses. First, the Debtor only accounts for $7,500 per month being paid to Ridgewood while the debt service is $7,900 per month; thus, there is only $207 in net income to make up for that $400 shortfall per month. Further, the Debtor does not take into account real

estate tax escalations or major (or even minor) repairs, maintenance or improvements. Although

the Debtor claims that its principal will make up the shortfall, again it is unclear how she intends

to do that as there has been no disclosure of same. The Plan proposed by the Debtor is simply

not feasible.

15.     Since the Plan is patently unconfirmable in that it does not provide for the

payment of Ridgewood's arrears on the Effective Date and it is not feasible regardless of when

those payments are to be made, the Disclosure Statement should not be approved. Where it is

evident that a proposed plan is unconfirmable, the assets of the estate should not be wasted in

permitting the solicitation of such a plan. Rather, the Court should stop the confirmation process

at the hearing upon the disclosure statement, in order to promote judicial economy.

B.      Lack of Financial Disclosure

16.     At a minimum, the Disclosure Statement contains woefully inadequate disclosure

as to the financial feasibility of the Plan. "A description of available assets and their value is a

vital element of necessary disclosure." In re Ligon, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985),

citing In re Metrocraft Publishing Services, Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984); see also,

In re Beltrami Enterprises, Inc., 191 B.R. 303 (Bankr. M.D. Pa. 1995). As set forth above,

however, there is not one iota of financial information with respect to the Debtor's ability to

make the payments required of it under the Plan, and the amount that the Debtor's principal has

available for contribution and the timing of those contributions. As to the Debtor, there are no

cash flow projections attached to the Disclosure Statement, there is no information with respect

to the leases of the Property to enable a creditor to determine when those leases expire or the

prospects of rent escalations thereunder or any other information with respect to the Debtor's

assets. As to the Debtor's principal, there is no disclosure or documentation of the principal's

finances, the principal's other "properties" including the items specified in paragraph 13 above, the principal's income and expenses and general ability to do what the plan says will be done. Although on page 9 of the Disclosure Statement the Debtor states that "the statements and information about the Debtor and the financial statements of the Debtor contained herein have been prepared by the Debtor," there are no financial statements contained in the Disclosure Statement at all. Absent significant disclosure in this regard, this Disclosure Statement is incapable of approval.

17.    Furthermore, on page 10 of the Disclosure Statement (section IV(c)), the Debtor asserts that the value of the Property is $3,150,000. There is absolutely no basis for that valuation and if the Debtor believes that to be the case, the Debtor should attach some evidence as to the value of the Property. Importantly, this is now the third different valuation ascribed to the Property by the Debtor, all without backup. In the Debtor's original schedules, it listed the value of the Property at $900,000. In a motion filed by the Debtor for the use cash collateral, the Debtor concluded that the value of the Property was $1,000,000 without any evidentiary support for that valuation. Now, all of a sudden, the Property has a value of $3,150,000 again without documentation. However, Ridgewood has provided the Court with evidence that the value of the Property is $800,000, by way of an appraisal as of shortly before the Petition Date. Issues with respect to the value of the property must be properly disclosed by the Debtor. Finally, there is no liquidation analysis included in the Disclosure Statement. This is especially important if the Debtor has evidence that the value of the property is $3,150,000. If that is indeed the case, Ridgewood is entitled to post-petition interest and attorneys fees, and the creditors are entitled to be paid 100% of their claims.

C.    Inadequate Disclosure Regarding Claims

18.    The Disclosure Statement also fails to adequately describe the claims against the

Debtor and the impairment of same.  Nowhere in either the Disclosure Statement or the Plan is

there a discussion of the estimated amount of administrative claims or the actual amount of

unsecured claims against the Debtor's estate, despite the passing of the Bar Date.  There is no

discussion of tax claims even though filed claims within this class exist.

19.    Moreover, the treatment of unsecured claims is inconsistent in the Debtor's

documents.  In fact, the Plan and Disclosure Statement provide three (3) different treatments of

unsecured claims.  On pages 4 (section I(b)) and 11 (section IV(f)(iii)) of the Disclosure

Statement, the Debtor proposes to pay unsecured claims 50% of the allowed amount of their

claims.  On page 14 (end of section V) of the Disclosure Statement, the Debtor discusses a 2%

distribution to unsecured creditors.  Finally, on page 11 (section III(C)(1)) of the Plan, the Debtor

proposes to pay unsecured claims 50% of the amount of their claims over a five (5) year period.

All of these inadequacies and inconsistencies must be addressed.

20.    There is also confusion as to which claims are impaired and permitted to vote on

the Plan.  On page 14 (section VI(a)) of the Disclosure Statement, it is clear that the Debtor

deems unsecured claims to be impaired and entitled to vote.  It is unclear as to the Debtor's

position on holders of allowed secured claims in class 1, and class 2 is not even discussed in this

section.  This is all inconsistent with the language on page 15 (section VI(a)) of the Disclosure

Statement in which the Debtor appears to assert that any entity who has a claim scheduled or

who has filed a proof of claim is entitled to vote to accept or reject the Plan.  Finally, to the

extent that Ridgewood's arrears are not being paid on the Effective Date, it is not unimpaired

under section 1124(2) as suggested by the Debtor, and is therefore entitled to vote. All of the confusing language and inconsistences must be clarified.

D.   Treatment of Equity Interests

21.   Pursuant to the Debtor's discussion on page 11 (section IV(f)(vi)) of the Disclosure Statement, existing equity interests will be cancelled. However, there is no absolutely no discussion in the Plan or the Disclosure Statement as to (a) who will hold the equity interests in the Reorganized Debtor going forward, (b) what the consideration for the issuance of such equity interests is, and (c) whether and to what extent the equity interests will be marketed if the Debtor intends to issue equity in the Reorganized Debtor to its existing shareholder. Applicable case law requires that entities other than existing equity be given the opportunity to bid on the ownership interests in the Debtor. See, e.g., Bank of America National Trust and Savings Assn. v. 203 No. LaSalle St. Pshp., 526 U.S. 434 (1999).

E.   Treatment of Executory Contracts

22.   In addition, the Debtor's discussions of the treatment of executory contracts is inadequate. On page 12 (section V(b)) of the Disclosure Statement, the Debtor states that it intends to assume all executory contracts. The Debtor makes this statement even though the section of the Disclosure Statement in which it is made is entitled "Rejection of Executory Contracts". That in and of itself is a source of confusion. Moreover, there is absolutely no discussion in the Disclosure Statement as to (a) the nature of the contracts, (b) whether and to what extent any arrears exist thereunder and the amount of same, and (c) how the Debtor intends to cure those arrears in order to assume the contracts as proposed. All of this must be disclosed before the Disclosure Statement can be approved by the Court.

F.    Releases

23.    Finally, the Disclosure Statement itself provides absolutely no discussion of

releases being given by creditors and parties in interest to the Debtor and/or its principal.  The

Disclosure Statement should include a discussion of same, especially since the description of the

releases in the Plan is unclear and possibly improper.  On page 27 (section XIII(E)) of the Plan,

the Debtor provides that neither it nor its shareholders, members and the other "Released Parties"

will be released by any governmental entity.  By specifically excluding from effect releases from

governmental entities, the Plan appears to effectuate a release of the "Released Parties" by any

other person or entity, impermissibly.   Thus, the true intent of the release provision of the Plan

should be discussed in the Disclosure Statement so that creditors and parties in interest can better

understand and oppose those provisions of the Plan should they deem it necessary.

## CONCLUSION

24.    For the reasons set forth above, Ridgewood believes that the Disclosure Statement

should not be approved by the Court.

WHEREFORE, Ridgewood respectfully requests that the Court grant the relief sought

herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
        June 20, 2014

                                    CULLEN AND DYKMAN LLP
                                    Attorneys for Ridgewood Savings Bank


                        By:     s/ Bonnie Pollack
                                    Matthew G. Roseman
                                    Bonnie L. Pollack
                                    100 Quentin Roosevelt Boulevard
                                    Garden City, New York 11530
                                    (516) 357-3700

11

**EXHIBIT A**

In re **PJETR REALTY**
    Debtor

Case No. **13-23894(RDD)**
Reporting Period: **5/1/14-5/31/14**

### CASH FLOW PROJECTION FOR THE PERIOD _____12/1/2013_____ THROUGH _____11/1/2014_____

A cash flow projection must be included for each property. The debtor's cash flow projection may be substituted for this page. Attach additional sheets as needed. This projection needs to be completed at the beginning of the case, every year, or when there are significant changes (i.e. tenant change, rent change, etc.)

Property: **600 5TH AVE, PELHAM, NY**
Square Footage: **4500**

| | 12/1/2013 | 1/1/2014 | 2/1/2014 | 3/1/2014 | 4/1/2014 | 5/1/2014 | 6/1/2014 | 7/1/2014 | 8/1/2014 | 9/1/2014 | 10/1/2014 | 11/1/2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | |
| Rental Income | 6330 | 6330 | 6330 | 6330 | 7330 | 7330 | 7330 | 7330 | 7330 | 7330 | 7330 | 7330 |
| Additional Rental Income | 1000 | 1000 | 1000 | 1000 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 | 1500 |
| Common Area Maintenance Reimbursement | | | | | | | | | | | | |
| Total Income | 7330 | 7330 | 7330 | 7330 | 8830 | 8830 | 8830 | 8830 | 8830 | 8830 | 8830 | 8830 |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| Advertising | 0 | | | | | | | | | | | |
| Auto and Truck Expense | 0 | | | | | | | | | | | |
| Cleaning and Maintenance | 0 | | | | | | | | | | | |
| Commissions | 0 | | | | | | | | | | | |
| Officer/Insider Compensation* | 0 | | | | | | | | | | | |
| Insurance | 700 | 700 | 700 | 700 | 673 | 673 | 673 | 673 | 673 | 673 | 673 | 673 |
| Management Fees/Bonuses | 0 | | | | | | | | | | | |
| Office Expense | 0 | | | | | | | | | | | |
| Other Interest | 0 | | | | | | | | | | | |
| Repairs | 300 | 300 | 300 | 300 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Taxes - Real Estate | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 | 2500 |
| Travel and Entertainment | 0 | | | | | | | | | | | |
| Utilities | 200 | 200 | 200 | 200 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Other *(attach schedule)* | | | | | | | | | | | | |
| Total Expenses | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 | 3800 |
| Debt Service | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 |
| Professional Fees | | | | | | | | | | | | |
| U.S. Trustee Fees | UNKNOWN | | | | | | | | | | | |
| Court Costs | UNKNOWN | | | | | | | | | | | |
| Net Income | -1470 | -1470 | -1470 | -1470 | 207 | 207 | 207 | 207 | 207 | 207 | 207 | 207 |
| Tenant Improvements | | | | | | | | | | | | |
| Vacancy Allowance | | | | | | | | | | | | |
| Net Cash Flow | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq. (MR 1387)
Bonnie L. Pollack, Esq. (BP 3711)
Attorneys for Ridgewood Savings Bank

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

Pjeter Realty, Inc.

                           Debtor.

Chapter 11
Case No. 13-23894 (RDD)

**AFFIDAVIT OF SERVICE**
-----------------------------------------------------------X

STATE OF NEW YORK   )
                          ) ss.:
COUNTY OF NASSAU   )

       CYNTHIA VASQUEZ, being duly sworn, deposes and says:

       That she is over the age of 21 years, resides in Massapequa Park, New York and is not a party to this action.

That on the 20th day of June, 2014, I served **OBJECTION TO APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT** via regular mail by depositing a true copy thereof in a properly sealed envelope maintained by the United States Postal Service in a depository located on the premises at Garden City Center, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, addressed as follows:

Pjeter Realty, Inc.
P.O. Box 34
Briarcliff Manor, NY 10510

Anne J. Penachio, Esq.
Penachio Malara LLP
235 Main Street
Sixth Floor
White Plains, NY 10601

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

Consolidated Edison
JAF Station
PO Box 1702
New York, NY 10116-1702

Consolidated Edison Company
of New York Inc
4 Irving Place, Rm 1875-S
New York, NY 10003
Bankruptcy Group

Alice
600 Fifth Avenue
Pelham, NY 10803-1208

Eisenoff Appraisers
176-26 Union Turnpike
Suite 228
Flushing, New York 11366

Flaum & Associates, P.C.
369 Lexington Avenue
12th Floor
New York, New York 10017-6506

Jack Mungovan
600 Fifth Avenue
Pelham, NY 10803-1208

NYS Dept of Tax & Finance
Bankruptcy Section
PO Box 5300
Albany, New York 12205-0300

Pelham Social LLC
600 Fifth Avenue
Pelham, NY 10803-1208

CYNTHIA VASQUEZ

Sworn to before me this
20th day of June, 2014.

Notary Public

EMILIA QUARTARARO
Notary Public, State of New York
No. 01QU5013232
Qualified in Suffolk County
Commission Expires July 15, 20 15