CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for Ridgewood Savings Bank

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:                                          Chapter 11
                                                Case No. 13-23894 (RDD)

Pjetr Realty, Inc.,

                           Debtor.
-------------------------------------------------------------X

## AMENDED CHAPTER 11 PLAN OF LIQUIDATION
## FILED BY RIDGEWOOD SAVINGS BANK
## AS PLAN SPONSOR

DATED AS OF JULY 10, 2014

## TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS ...........................................................................................1

ARTICLE II       SUMMARY OF PLAN ...............................................................................9

ARTICLE III      TREATMENT OF ADMINISTRATIVE CLAIMS AND FEE
                 CLAIMS ......................................................................................................10

ARTICLE IV       CLASSIFICATION OF CLAIMS AND INTERESTS ...................................12

ARTICLE V        TREATMENT OF CLAIMS AND INTERESTS ...........................................12

ARTICLE VI       ACCEPTANCE OR REJECTION OF PLAN.................................................13

ARTICLE VII      IMPLEMENTATION OF THE PLAN ...........................................................14

ARTICLE VIII     CLAIM OBJECTIONS AND DISTRIBUTIONS...........................................15

ARTICLE IX       EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................20

ARTICLE X        EFFECT OF THE PLAN ON CLAIMS AND INTERESTS..........................21

ARTICLE XI       CONDITIONS TO CONFIRMATION AND CONSUMMATION ...............24

ARTICLE XII      RETENTION OF JURISDICTION.................................................................24

ARTICLE XIII     ADMINISTRATIVE PROVISIONS ..............................................................26

Ridgewood Savings Bank ("Ridgewood" or the "Plan Proponent") hereby proposes the
following Amended Chapter 11 Plan of Liquidation (the "Plan") in connection with the case of
Pjetr Realty, Inc. (the "Debtor").

Reference is made to the Amended Disclosure Statement For Plan of Liquidation, dated
July 10, 2014 (the "Disclosure Statement"), for a discussion of the Debtor's business, the
administration of the Debtor's case and for a summary and analysis of the Plan.

All creditors entitled to vote on the Plan should review the Disclosure Statement before
voting to accept or reject the Plan.  Documents referenced in the Plan and/or the Disclosure
Statements are also available for review.

## ARTICLE I - DEFINITIONS

The capitalized terms used herein shall have the meanings set forth below.  Terms used
herein and not otherwise defined shall have the meanings given to them in the Bankruptcy Code
or the Bankruptcy Rules unless the context requires otherwise.

**1.1.    Administrative Bar Date means** the date which shall be thirty (30) days after the
Confirmation Date, by which proofs of claim or applications for payment of Administrative
Claims arising subsequent to November 18, 2013 and before the Confirmation Date must be filed
with the Court, with copies to the parties listed in Section 13.12 of this Plan.

**1.2.    Administrative Claim means** a Claim for a cost or expense of administration of
the Chapter 11 Case, other than a Fee Claim. allowable under section 503(b) of the Bankruptcy
Code, and referred to in section 507(a)(1) of the Bankruptcy Code, including: (a) the actual,
necessary costs and expenses incurred after the commencement of the Chapter 11 Case of
preserving the Estate and operating the business of the Debtor; (b) wages, salaries or
commissions for services incurred after the Petition Date; and (c) all fees and charges assessed
against the Estate of the Debtor under Chapter 123 of title 28, United States Code.

1.3.    **Allowed** means, with respect to any Claim, a Claim, subject to Section 8.1 of the

Plan, (i) which is scheduled as undisputed, noncontingent and liquidated in the Schedules, or any

amendment to the Schedules, and as to which no proof of Claim has been timely filed; (ii) as to

which a proof of Claim has been timely filed in a liquidated, non-contingent amount and either

(a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to

the extent allowed) by a Final Order of the Court; (iii) which has been expressly allowed under

the provisions of this Plan; or (iv) which is an Administrative Claim to which no objection has

been asserted, or which has been approved by Final Order of the Court. An Allowed Claim:

(x) includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed

when the context so requires; and (y) shall be net of any valid setoff or recoupment amount

against such Claim based on a valid offset or recoupment right of the Debtor, which valid setoff

or recoupment amount shall be deemed to have been setoff or recouped in accordance with the

provisions of this Plan. Unless otherwise specified herein or by order of the Court, Allowed

Claims shall not, for any purpose under the Plan, include interest on such Claims on or after the

Petition Date.

1.4.    **Ballot** means the ballot distributed to each eligible claimant by the Balloting

Agent, on which ballot such claimant may, inter alia, vote for or against the Plan.

1.5.    **Ballot Deadline** means the date and time set by the Court by which the Balloting

Agent must receive all Ballots.

1.6.    **Balloting Agent** means Cullen and Dykman LLP, 100 Quentin Roosevelt

Boulevard, Garden City. New York, NY 11530.

1.7.    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or

hereafter amended.

**1.8.** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and any applicable local rules of the Court as now in effect or hereafter amended.

**1.9.** **Bar Date** means May 22, 2014, the date established by order of the Bankruptcy Court dated March 31, 2014 as the last date by which proofs of claim arising prior to the Petition Date must have been filed with the Court.

**1.10.** **Bidding Procedures** means the procedures for conducting the Sale, annexed to the Disclosure Statement as Exhibit "A" thereto.

**1.11.** **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.12.** **Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

**1.13.** **Chapter 11 Case** means the chapter 11 case of the Debtor pending before the Court.

**1.14.** **Claim** means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.15.** **Class** means a group of Claims or Interests as described in Articles III and IV of the Plan.

**1.16.** **Confirmation Date** means the date the Court enters the Confirmation Order on its docket.

**1.17.** **Confirmation Hearing** means the hearing by the Court to consider confirmation of the Plan.

**1.18.** **Confirmation Order** means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.19.   Court** means the United States Bankruptcy Court for the Southern District of New York, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

**1.20.   Debtor** means Pjetr Realty, Inc.

**1.21.   Disallowed Claim** means a Claim or portion thereof that (i) has been disallowed by a Final Order of the Court; (ii) is identified in the Schedules of Assets and Liabilities in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules of Assets and Liabilities and as to which no proof of Claim has been filed or deemed filed by the Bar Date.

**1.22.   Disclosure Statement** means the Amended Disclosure Statement dated July 10, 2014 that relates to this Plan and which is approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

**1.23.   Disclosure Statement Order** means the order of the Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**1.24.   Disputed Claim** means any Claim or any portion thereof which has not become Allowed, which is not a Disallowed Claim, or against which an objection to the allowance thereof has heretofore been or is hereafter interposed and which has not been allowed by Final Order; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is or becomes the subject of an application, motion, complaint, objection,

or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, shall be deemed to constitute a Disputed Claim.

**1.25.** **Distribution** means the distribution of the Distribution Fund in accordance with this Plan, or the Cash so distributed.

**1.26.** **Distribution Address** means the address set forth in the relevant proof of claim. If no proof of claim is filed in respect to a particular Claim, such defined term means the address set forth in the Debtor's Schedules of Assets and Liabilities.

**1.27.** **Distribution Date** means the later of (a) ten (10) days after the closing of the Sale, or (b) ten (10) days after all Disputed Claims become Allowed Claims, provided however that the Distribution Date may occur after the closing of the Sale but before such time as all Disputed Claims become Allowed Claims, as long as there is established a reserve consisting of the full amount of all Disputed Claims, from which such Disputed Claims shall be paid if and to the extent they become Allowed Claims.

**1.28.** **Distribution Fund** means the proceeds of the Sale, net of (a) the costs and expenses of sale including without limitation the auctioneer's costs and expenses and broker commissions, (b) the costs and expenses of the Plan Sponsor to prepare and sponsor the Plan and to solicit votes upon the Plan, and (c) the costs and expenses incurred in connection with the Transfer Services.

**1.29.** **Effective Date** means the first Business Day after the date each of the conditions set forth in Section 11.1 hereof has been satisfied.

**1.30.** **Estate** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.31.   Estate Causes of Action** means the actions commenced or to be commenced to recover monies for the Estate under Chapter 5 of the Bankruptcy Code, or any actions or proceedings commenced or to be commenced for the benefit of the Estate, including without limitation, proceedings described in Section III (F) of the Disclosure Statement.

**1.32.   Fee Claim** means a Claim for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case.

**1.33.   Fee Claims Bar Date** means a date which shall be thirty (30) days after the Confirmation Date, by which date all applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court.

**1.34.   Final Order** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court, could be filed with respect to such order shall not cause such order not to be a Final Order.

**1.35.   General Unsecured Claim** means any Claim that is not an Administrative Claim, Fee Claim, Priority Non-Tax Claim, Priority Tax Claim, the Ridgewood Secured Claim, or a Claim included within any other Class of Claims or Interests.

**1.36.   Insider Claim** means any Claim of an Interest holder against the Estate, whether filed or not.

**1.37.   Interest** means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor, including, but not limited to, the stock of the Debtor.

**1.38.   Person** means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, interest holders, holders of Claims, current or former employees of the Debtor, or any other entity.

**1.39.   Petition Date** means November 18, 2013.

**1.40.   Plan** means this Amended Plan of Liquidation, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as may be filed hereafter in accordance with the terms of the Plan, the Bankruptcy Code and other applicable law.

**1.41.   Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim, Fee Claim, and Priority Tax Claim.

**1.42.   Priority Tax Claim** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.43.   Property** means the real property owned by the Debtor and located at 600 5th Avenue, Pelham, New York.

**1.44.   Ratable, Ratably or Ratable Share** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount

7

of: (a) Allowed Claims in such Class, plus (b) Disputed Claims in such Class as of any date of determination.

**1.45.** **Ridgewood** means Ridgewood Savings Bank, a creditor holding a secured claim against the Property, and which is also the Plan Sponsor.

**1.46.** **Ridgewood Secured Claim** means the claim of Ridgewood filed in the amount of $935,569.91 on November 22, 2013, secured by a first mortgage lien against the Property.

**1.47.** **Sale** means the sale of the Property pursuant to the terms of this Plan, as discussed in Section IV(B) of the Disclosure Statement.

**1.48.** **Schedules** means the Schedules of Assets and Liabilities.

**1.49.** **Schedules of Assets and Liabilities** means Debtor's schedules of assets and liabilities filed with the Court pursuant to sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code, as the same may have been, or may hereafter be, amended.

**1.50.** **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor's interest in property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date. The defined term Secured Claim includes any Claim that is: (i) subject to an offset right and the holder of such Secured Claim under applicable law; and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.51.** **Tenant Leases** means all leases by and between the Debtor, as lessor, and tenants of the Property, including without limitation the lease of the restaurant operated at the Property.

**1.52.   Transfer Counsel** means counsel to be selected by the Plan Sponsor to be retained under the Plan to undertake the Transfer Services as well as to execute any such documents on behalf of the Debtor's Estate, to the extent Debtor's counsel elects not to perform the Transfer Services.

**1.53.   Transfer Services** means all steps necessary to sell the Property, including without limitation the preparation of a contract of sale, closing documents and any other documents necessary to sell the Property.

**1.54.   Unclaimed Property** means any Cash unclaimed after ninety (90) days following a Distribution Date as provided in Section 8.4 of this Plan. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts to locate such address which were reasonable under the circumstances as provided for in the Plan.

**1.55.   United States Trustee** means the Office of the United States Trustee for the Southern District of New York.

## ARTICLE II - SUMMARY OF PLAN

This Plan is a liquidating plan. The Plan is premised upon the Sale of the Property subject to existing Tenant Leases including the right to collect back rent thereunder. As set forth in the Disclosure Statement, once the Plan has been confirmed, the Plan Sponsor shall hire a property manager/auctioneer to collect rents from the tenants of the Property, pay the operating expenses associated with the Property, and to market the Property, as well as all Tenant Leases and security deposits in connection therewith, for sale, pursuant to the Bidding Procedures annexed to the Disclosure Statement as Exhibit "A" thereto, and shall select Transfer Counsel to

perform the Transfer Services to the extent Debtor's counsel elects not to perform the Transfer

Services. As set forth in the Bidding Procedures, the Sale shall occur within 60 days of the

Confirmation Date. The costs and expenses incurred in connection with the sale of the Property,

including without limitation the auctioneer's costs and expenses and broker commissions if any,

as well as the costs and expenses of the Plan Sponsor to prepare and sponsor the Plan, to solicit

votes upon the Plan, and the costs and expenses incurred in connection with the Transfer

Services, will be paid from the proceeds of the Sale. The remaining proceeds of the Sale will

form the Distribution Fund for payments to creditors under the Plan.

The Plan divides Claim holders into four (4) separate Classes, two (2) of which are

unimpaired and two (2) of which may be impaired. There are also three (3) unclassified

categories of Claims – Administrative Claims, Fee Claims and Priority Tax Claims.

## ARTICLE III - TREATMENT OF ADMINISTRATIVE
## CLAIMS, FEE CLAIMS AND PRIORITY TAX CLAIMS

Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and

are excluded from the Classes set forth in Article IV.

3.1. **Administrative Claims.** Each holder of an Allowed Administrative Claim shall

be paid 100% of the allowed amount of such Administrative Claim from the Distribution Fund

on or as soon as reasonably practicable after Distribution Date, or receive such other less

favorable treatment as may be agreed upon by such holder and the Plan Sponsor.

Notwithstanding the immediately preceding sentence, Administrative Claims of the United

States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the

applicable schedule for payment of such fees.

3.2. **Bar Date for Administrative Claims. Proofs of claim or applications for**

**payment of Administrative Claims (other than Fee Claims) arising subsequent to**

10

November 18, 2013 and before the Confirmation Date must be filed with the Court, with
copies to the parties listed in Section 13.12, of this Plan on or before the Administrative Bar
Date. Any Person that fails to file such a proof of claim or application with the Court
within that time shall be forever barred from asserting such an Administrative Claim
including without limitation, against the Debtor, the Estate, the Plan Sponsor or their
property, or commencing or continuing any action, employment of process, or act to
collect, offset, or recover any such Administrative Claim.

3.3.     **Fee Claims.**  Each holder of an Allowed Fee Claim for services rendered through
the Effective Date shall receive 100% of the Allowed amount of such Claim, from the
Distribution Fund on or as soon as reasonably practicable after the Distribution Date, or receive
such other less favorable treatment as may be agreed by such holder and the Plan Sponsor.

3.4.     **Bar Date for Fee Claims.  All applications for payment of Fee Claims for
services rendered through the Confirmation Date must be filed with the Court with copies
to the parties listed in Section 13.12, on or before the Fee Claims Bar Date. Any Person or
entity that fails to file such application on or before such date shall be forever barred from
asserting such a Fee Claim against the Debtor, the Estate, the Plan Sponsor or their
property, and the holder thereof shall be permanently enjoined from commencing or
continuing any action, employment of process or act to collect, offset or recover such Fee
Claim.**

3.5.     **Priority Tax Claims.**  Each holder of an Allowed Priority Tax Claim  shall
receive 100% of the Allowed amount of such Claim, from the Distribution Fund on or as soon as
reasonably practicable after the Distribution Date, or receive such other less favorable treatment
as may be agreed by such holder and the Plan Sponsor.

## ARTICLE IV - CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims and specifies which of those

Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject

this Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject this Plan.

### 4.1.   Classes

|         | Class                    | Status       | Voting Rights |
|---------|--------------------------|--------------|---------------|
| Class 1 | Ridgewood Secured Claim  | Impaired     | Yes           |
| Class 2 | Priority Non-Tax Claims  | Not Impaired | No            |
| Class 3 | General Unsecured Claims | Not Impaired | No            |
| Class 4 | Interests                | Impaired     | Yes           |

**4.2.   General Rules of Classification.** Generally, a Claim is classified in a particular

Class for voting and distribution purposes only to the extent the Claim has not been paid,

released or otherwise satisfied and qualifies within the description of that Class, and is classified

in another Class or Classes to the extent any remainder of the Claim qualifies within the

description of such other Class or Classes. For voting and distribution purposes, a holder of

more than one Claim in a Class shall be deemed to have a single Claim in such Class.

## ARTICLE V - TREATMENT OF CLAIMS AND INTERESTS

**5.1.   Ridgewood Secured Claim (Class 1)**. Class 1 under the Plan consists of the

Ridgewood Secured Claim. The Ridgewood Secured Claim shall be paid in full in Cash on or as

soon as reasonably practicable after the Distribution Date, from the Distribution Fund remaining

after payment of the Allowed Administrative Claims, Fee Claims and Priority Tax Claims. Upon

receipt of the Distribution to which Ridgewood is entitled, Ridgewood's lien against the Property

shall be deemed released and satisfied.

**5.2.   Priority Non-Tax Claims (Class 2)**. Each holder of an Allowed Priority Non-

Tax Claim shall be paid in full in Cash on or as soon as reasonably practicable after the

Distribution Date from the Distribution Fund remaining after payment of Allowed

12

Administrative Claims, Fee Claims, Priority Tax Claims and the Ridgewood Secured Claim. To the extent there are insufficient amounts in the Distribution Fund to make such payments in full, the Plan Sponsor shall carve out and pay such Claims from the amounts otherwise due to be paid upon the Ridgewood Secured Claim. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Plan Sponsor.

**5.3.    General Unsecured Claims (Class 3).** Each holder of an Allowed General Unsecured Claim shall be paid in full in Cash on or as soon as reasonably practicable after the Distribution Date from the Distribution Fund remaining after payment of Allowed Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims and the Ridgewood Secured Claim. To the extent there are insufficient amounts in the Distribution Fund to make such payments in full, the Plan Sponsor shall carve out and pay such Claims from the amounts otherwise due to be paid upon the Ridgewood Secured Claim. Notwithstanding the foregoing, the holder of an Allowed General Unsecured Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Plan Sponsor.

**5.4.    Interests (Class 4).** The holders of Interests in Class 4 shall receive the remainder of the Distribution Fund after payment of all Allowed Claims. Insider Claims shall be deemed to constitute and be treated as a Class 4 Interest.

## ARTICLE VI - ACCEPTANCE OR REJECTION OF PLAN

**6.1.    Voting of Claims.** Each holder of an Allowed Claim in Classes 1 and 4 shall be entitled to vote to accept or reject this Plan.

**6.2.    Acceptance by a Class.** Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than

13

one-half in number of the holders, of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**6.3.     Presumed Acceptance of Plan.** Pursuant to section 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a plan is conclusively presumed to accept a plan. Accordingly, Classes 2 and 3 are unimpaired or conclusively presumed to accept the Plan.

**6.4.     Presumed Rejection of Plan.** In accordance with section 1126(g) of the Bankruptcy Code, any Class that is to receive no distribution under a plan is conclusively presumed to reject a plan. No Class is conclusively presumed to reject this Plan.

## ARTICLE VII - IMPLEMENTATION OF THE PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of the Plan.

**7.1.     Funding of the Plan.**

(a)     **Source of Distributions.** The Distribution Fund will be derived from funds remaining in the Debtor's bank account as of the Distribution Date, and the proceeds of the Sale, net of (a) the costs and expenses of sale including without limitation the auctioneer's costs and expenses, broker commissions and the costs and expenses in connection with the Transfer Services, and (b) the costs and expenses of the Plan.

(b)     **Maintenance of Distribution Fund.** The Distribution Fund shall be held by the Plan Sponsor until the Distribution Date. On the Distribution Date, the Plan Sponsor shall make the Distributions upon all Allowed Claims.

**7.2.     Exemption from Certain Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code: (i) the sale of the Property hereunder; (ii) the issuance, transfer or exchange of any securities, instruments or documents; (iii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iv) the making or assignment of any lease or the making or

14

delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, the Plan or the sale of the Property hereunder, including any deeds, bills of sale or assignments executed in connection with the Plan, shall not be subject to any stamp tax or similar tax, to the fullest extent provided for under section 1146(a) of the Bankruptcy Code.

**7.3.    Operation of Property Until Sale.** Once the Plan has been confirmed, the Plan Sponsor shall hire a property manager/auctioneer to collect rents from the tenants of the Property, pay the operating expenses associated with the Property and operate the Property until such time as the Sale is conducted and closes.

**7.4    Estate Causes of Action.** The Debtor shall have the option of commencing any Estate Causes of Action to recover the proceeds thereof for the Estate. To the extent any such causes of action are commenced, the proceeds received in prosecution of such actions, net of any Allowed costs and expenses incurred in connection therewith, shall be distributed first, to Ridgewood to the extent that Ridgewood's collateral was used to make payments to Claimants in Classes 2 and 3 hereunder and for payments of Allowed Administrative Claims, Fee Claims and Priority Tax Claims; and next, to the holders of Interests.

**7.5.    Withdrawal of the Plan.** The Plan Sponsor reserves the right to revoke and withdraw or to modify the Plan in accordance with Section 13.1 hereof at any time up to the Effective Date.

**7.6.    Cramdown.** The Plan Sponsor reserves the right to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class voting against the Plan.

## ARTICLE VIII - CLAIM OBJECTIONS AND DISTRIBUTIONS

**8.1.    Objections to and Estimation of Claims.** From and after the Effective Date, the Debtor and the Plan Sponsor shall have the right to object to the allowance of any Claim, and

15

may file with the Court any appropriate motion with respect thereto within 60 days of the
Effective Date. To the extent the Plan Sponsor elects to object to any Claim, the Debtor shall
cooperate with the Plan Sponsor and provide any documents or information to the Plan Sponsor
as may be necessary or desirable to assist in such Claim objections.

    **8.2.    Claims Filed After Bar Date.** Any Claim filed after the Bar Date shall, unless
such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be
deemed Disallowed in full and expunged without further order of the Court. Filed or Scheduled
Claims may be amended or reconsidered only as provided in the Bankruptcy Code and
Bankruptcy Rules. A Claim may be amended prior to the Confirmation Date only as agreed
upon by the Debtor, the Plan Sponsor and the holder of such Claim, or as otherwise permitted by
the Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as
otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the
authorization of the Court or consent of the Plan Sponsor.

    **8.3.    Transmittal of Distributions and Notices.**

        (a)    Any property or notice which a Person is or becomes entitled to receive
pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope
addressed to that Person or authorized agent at the address indicated on the latest notice of
appearance or the latest proof of claim or other paper filed by that Person or his authorized agent.
Absent any of the foregoing, the address set forth in the relevant Schedule of Assets and
Liabilities for that Person may be used. Property distributed in accordance with this Section
shall be deemed delivered to such Person regardless of whether such property is actually
received by that Person. Notwithstanding anything in this Plan to the contrary, neither the
Debtor nor the Plan Sponsor shall have any obligation to attempt to locate any Person who is or

becomes entitled to receive any Distribution under the Plan with regard to any undeliverable or
uncashed Distributions.

(b)    A holder of a Claim or Interest may designate a different address for
notices and Distributions by notifying the Debtor of that address in writing. Any change of
address of a party entitled to receive Distributions hereunder must be provided by registered mail
in order to be effective. Such notification shall be effective upon receipt.

(c)    If any Distribution to a holder of a Claim is returned as undeliverable (e.g.,
"forwarding time expired, "addressee unknown", etc.), no further Distributions to such holder
shall be made unless and until the Debtor is timely notified within the time limits set forth in
Section 8.4 of the Plan, in writing, of such holder's then current address, at which time all missed
Distributions shall be made to such holder without interest.

**8.4.    Unclaimed Property.** If any Distribution remains unclaimed for a period of
ninety (90) days after the relevant Distribution Date to the holder of an Allowed Claim entitled
thereto, the Distribution shall constitute Unclaimed Property and the holder shall no longer be
entitled to such Distribution. All such property shall be retained by the Plan Sponsor for
distribution pursuant to the terms of the Plan, subject, however, to the right to distribute
Unclaimed Property to holders entitled thereto if such holders are subsequently located.

**8.5.    Withholding Taxes and Expenses of Distribution.** Any federal, state or local
withholding taxes or other amounts required to be withheld under applicable law shall be
deducted from Distributions hereunder. All Persons holding Claims shall be required to provide
any information necessary to effect the withholding of such taxes, and the Debtor shall be
authorized to withhold Distribution on such Claims until the requisite information is received. If
such information is not received within ninety (90) days after the Distribution Date, the

17

provisions of the immediately preceding Section 8.4 shall apply. In addition, all Distributions under the Plan shall be net of the actual and reasonable costs of making such Distributions and of any allocable fees or other charges relating thereto.

**8.6.    Disputed Payment.** Notwithstanding anything to the contrary herein, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any time before an otherwise applicable Distribution is issued, the Debtor has taken action to recover on any causes of action or defenses against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense is resolved by Final Order or agreement of the Debtor. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Sponsor, in lieu of making such Distribution to such Person, may reserve for such Distribution until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

**8.7.    Setoffs and Recoupment.** Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, the Plan Sponsor may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Plan Sponsor, nor any provision of this Plan shall constitute a waiver or release by the Plan Sponsor of any such claims, rights and causes of action that the Debtor may possess against such holder. To the extent the Plan Sponsor fails to setoff or

18

recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to
such creditor pursuant to the Plan, the Plan Sponsor, if successful in asserting such claim, shall
be entitled to full recovery against such creditor. The Plan Sponsor may seek periodic Court
approval for any such setoffs or recoupments.

### 8.8.   Miscellaneous Distribution Provisions.

(a)   **Method of Cash Distributions.** Any Cash payment to be made by the
Plan Sponsor pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion
of the Plan Sponsor, by draft, check, wire transfer, or as otherwise required or provided in any
relevant agreement or applicable law.

(b)   **Distributions on Non-Business Days.** Any payment or Distribution due
on a day other than a Business Day shall be made, without interest, on the next Business Day.

(c)   **No Distribution in Excess of Allowed Amount of Claim.**
Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in
respect of such Claim any Distribution of a value in excess of the allowed amount of such Claim.
Except as otherwise expressly provided herein, no Claim shall be allowed nor Distribution made
to the extent that it is for post-petition or post-Confirmation interest.

(d)   **Minimum Distributions.** If a Distribution to be made to a given holder
of an Allowed Claim would be $25.00 or less in the aggregate, notwithstanding any contrary
provision of this Plan, no such Distribution will be made to such holder. Any unclaimed
Distributions shall be retained by the Debtor for distribution pursuant to the terms of the Plan.

(e)   **Disposition of Excess Funds.** If, after ninety (90) days following the
final Distribution Date. any Unclaimed Property remains, or Cash of inconsequential value to the
Estate remains in the possession or under the control of the Plan Sponsor, and the Plan Sponsor

19

has satisfied and discharged all the expenses intended to be paid on behalf of the Estate, the Plan
Sponsor shall either apply remaining Cash or Unclaimed Property for further Distribution
Ratably in accordance with the Plan or abandon such funds in a commercially reasonable
manner, including to a charitable organization.

## ARTICLE IX - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1.   Tenant Leases.** The Property will be sold subject to existing Tenant Leases
including the right to collect back rent thereunder. Tenant Leases include without limitation the
lease of the restaurant operated at the Property. Such Leases are neither being assumed nor
rejected hereunder.

**9.2.   Rejection of Executory Contracts and Other Unexpired Leases.** On the
Confirmation Date, but subject to the closing of the Sale, any other prepetition executory
contracts and unexpired leases of the Estate not previously assumed or rejected shall be deemed
rejected under sections 365 and 1123 of the Bankruptcy Code, except (a) the Tenant Leases; (b)
any executory contract or unexpired lease that is the subject of a separate motion to assume.
assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry
of the Confirmation Order; or (c) any executory contract or unexpired lease which shall have
expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto
shall not constitute an admission that any such contracts or leases are in fact executory contracts
or unexpired leases or that the Debtor had any liability thereunder.

**9.3.**   The Confirmation Order shall constitute an order of the Court approving the
rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code. as
of the Confirmation Date, but subject to the closing of the Sale. Notwithstanding anything in this
Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or

rejected pursuant to the terms of this Article IX if the Effective Date fails to occur for any
reason.

9.4. **Claims Relating to Rejected Pre-Petition Executory Contracts and
Unexpired Leases. Any Claim for damages arising by reason of the rejection of any pre-
petition executory contract or unexpired lease hereunder must be filed on or before thirty
(30) days following the Confirmation Date, and upon the failure of any entity to file such
claim on or before such date, such entity shall be forever barred from asserting a claim on
account of the rejection of such contract or unexpired lease, but shall nevertheless be
bound by the provisions of the Plan. Nothing in this Section 9.4 will extend any prior Bar
Date set by prior order of the Bankruptcy Court.**

There shall be no restriction on the rights of the Plan Sponsor to object to any Claims
relating to the rejection of executory contracts or unexpired leases, or to assert any defense or
counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not
have otherwise been identified in the Plan, Disclosure Statement or otherwise.

Any Allowed Claims arising from the rejection of an executory contract or unexpired
lease rejected pursuant to the provisions of Section 9.2 will constitute a Class 3 General
Unsecured Claim.

### ARTICLE X - EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

10.1. **Surrender of Securities and Cancellation of Existing Securities and/or
Related Agreements.**

(a) **Surrender of Securities.** Each holder of any Claim against or Interest in
the Plan Sponsor shall, to the extent not already done and to the extent applicable, surrender to
the Debtor any original note, instrument, certificate, certificated security or other item
evidencing such Claim, and provide copies of any supporting agreement or other document. No

21

Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until
such holder surrenders such items to the Plan Sponsor, or demonstrates the non-availability of
such items to the satisfaction of the Plan Sponsor, including requiring such holder to post a lost
instrument or other indemnity bond, among other things, to hold the Plan Sponsor harmless in
respect of such instrument or other item described above and any Distributions made in respect
thereof. Any such holder that fails to surrender such items described above or satisfactorily
explain their non-availability to the Plan Sponsor within ninety (90) days of the Distribution Date
shall be deemed to have no further Claim against the Debtor, the Estate, the Plan Sponsor, or
their property in respect of such Claim and shall not participate in any Distribution hereunder,
and the Distribution that would otherwise have been made to such holder shall be treated as
Unclaimed Property. Notwithstanding the immediately preceding sentence, any such holder of a
Disputed Claim shall not be required to surrender such items until the time such Claim is allowed
or disallowed.

   (b) **Cancellation of Existing Securities and/or Related Agreements.**

Except for purposes of evidencing a right to distributions under this Plan or otherwise provided
hereunder, on the Effective Date, all agreements and other documents evidencing (i) any Claims
or rights of any holder of a Claim against or Interest in the Debtor and (ii) any options or
warrants to purchase Interests, obligating the Debtor to issue, transfer or sell Interests or any
other capital stock of the Debtor, shall be deemed canceled and terminated and of no further
force or effect.

  **10.2. Injunction, Release, Discharge and Exculpation.**

   (a) **Injunction. All Persons who have held, hold or may hold Claims
against or Interests in the Debtor shall, with respect to any such Claims or Interests, be**

permanently enjoined from (i) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (ii) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (iii) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.

(b)    Release of Ridgewood. The Debtor shall be permanently enjoined from and after the Confirmation Date from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against Ridgewood based on any claim or cause of action against Ridgewood which arose prior to the Confirmation Date.

(c)    No Discharge. The Debtor is not entitled to, and will not receive, a discharge since the Plan is a liquidating plan and the Debtor will not be engaging in business after consummation of the Plan.

(d)    Exculpation. In accordance with Section 1125(e) of the Bankruptcy Code, any person that solicits acceptance or rejection of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Rules, is not liable, on account of such solicitation, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of a plan. Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this section 10.2(d), or (ii) limit the

**liability of the Debtor's of the Plan Sponsor's professionals to their respective clients
pursuant to DR 6-102 of the Code of Professional Responsibility.**

### ARTICLE XI - CONDITIONS TO CONFIRMATION AND CONSUMMATION

**11.1. Conditions to Effective Date/Consummation.** This Plan may not be
consummated, and the Effective Date shall not occur, unless and until the Confirmation Order
shall have become a Final Order.

### ARTICLE XII - RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Court
shall retain such jurisdiction as is legally permissible, including, without limitation, for the
following purposes:

(a)     To determine the allowability, classification, or priority of Claims upon
objection by the Debtor or the Plan Sponsor and the validity, extent, priority and nonavoidability
of consensual and nonconsensual liens and other encumbrances;

(b)     To issue injunctions or take such other actions or make such other orders
as may be necessary or appropriate to restrain interference with the Plan or its execution or
implementation by any Person, to construe and to take any other action to enforce and execute
the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be
necessary for the implementation, execution, performance and consummation of the Plan and all
matters referred to herein, and to determine all matters that may be pending before the Court in
the Chapter 11 Case on or before the Effective Date with respect to any Person;

(c)     To protect the property of the Estate from claims against, or interference
with, such property, including actions to quiet or otherwise clear title to such property or to
resolve any dispute concerning liens, security interest or encumbrances on any property of the
Estates;

24

(d)     To determine any and all applications for allowance of Fee Claims;

(e)     To determine any Priority Tax Claims, Priority Non-Tax Claims,

Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(f)     To determine any dispute relating the Sale, the Bidding Procedures, and confirmation of the Sale and/or any other matter that in any way relates to the foregoing;

(g)     To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

(h)     To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Part IX of the Plan;

(i)     To determine all Estate Causes of Action, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case, including any remands;

(j)     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purpose:

(k)     To issue orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code:

(l)     To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(m)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)     To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

(p)     To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

(q)     To approve any Distributions, or objections thereto, under the Plan;

(r)     To approve any Claims settlement entered into or offset exercised;

(s)     To enter a Final Order closing the Chapter 11 Case; and

(t)     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

## ARTICLE XIII - ADMINISTRATIVE PROVISIONS

### 13.1.  Amendments.

(a)     **Pre-Confirmation Amendment.** The Plan Sponsor may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)     **Post-Confirmation Amendment Not Requiring Resolicitation.** After the entry of the Confirmation Order, the Plan may be modified to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary

26

to carry out the purposes and effects of the Plan, provided that: (i) the Court approval for such modification is obtained, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims or Interests under the Plan.

        (c)    **Post-Confirmation/Pre-consummation Amendment Requiring**

**Resolicitation.** After the Confirmation Date and before substantial consummation of the Plan, the Plan Sponsor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Plan Sponsor obtains Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount of Allowed Claims in Classes entitled to vote upon the Plan; and (iv) the Plan Sponsor complies with the provisions of the Bankruptcy Code, including section 1125 of the Bankruptcy Code, with respect to the Plan as modified.

    **13.2.  Successors and Assigns.** The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

    **13.3.  Governing Law.** Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

    **13.4.  Courts of Competent Jurisdiction.** If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall

not control prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.5. Corporate Action.** Upon entry of the Final Decree, the Debtor shall be deemed dissolved without any requirement of further action by stockholders, members or directors of the Debtor and without any further action other than the filing of final tax returns, if required.

**13.6. Effectuating Documents and Further Transactions.** The Debtor, its counsel Transfer Counsel and the Plan Sponsor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan. Transfer Counsel shall be authorized to execute any such documents necessary to sell the Property pursuant to the Sale to the extent the Transfer Services are not performed by Debtor's counsel.

**13.7. Cramdown.** The Plan Sponsor reserves the right to request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

**13.8. Confirmation Order and Plan Control.** To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan.

**13.9. Severability.** In the event that the Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Plan Sponsor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose

of the term or provision held to be invalid, void or unenforceable, and such term or provision

shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or

interpretation, the remainder of the terms and provisions of this Plan shall remain in full force

and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or

interpretation. The Confirmation Order shall constitute a judicial determination and shall

provide that each term and provision of this Plan, as it may have been altered or interpreted in

accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.10. Fractional Distribution.** Whenever any payment of a fraction of a dollar would

otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest

whole dollar.

**13.11. Rules of Construction.**

(a)     **Undefined Terms.** Any term used herein that is not defined herein shall

have the meaning ascribed to any such term used in the Bankruptcy Code and/or the Bankruptcy

Rules, if used therein.

(b)     **Miscellaneous Rules.** (i) The words "herein," "hereof," "hereunder," and

other words of similar import refer to this Plan as a whole, not to any particular section,

subsection, or clause, unless the context requires otherwise; (ii) the rules of construction set forth

in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the

Confirmation Order; (iii) any reference in the Plan to an existing document or exhibit means

such document or exhibit as it may have been amended, restated, modified or supplemented as of

the Effective Date; (iv) in computing any period of time prescribed or allowed by the Plan, the

provisions of Bankruptcy Rule 9006(a) shall apply; and (v) whenever the Plan provides that a

payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after" such date.

**13.12. Notices.** All notices or requests in connection with the Plan shall be in writing and deemed to have been given five (5) Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission, addressed to:

    (a)    if to the Debtor:

        Penachio Malara, LLP
        Anne Penachio, Esq.
        235 Main Street, 6th Floor
        White Plains, New York 10601

    (b)    if to the Plan Sponsor:

        Cullen and Dykman LLP
        100 Quentin Roosevelt Blvd.
        Garden City, New York 11530
        Attn:   Bonnie Pollack, Esq.

**13.13. Post-Confirmation Date Service List - Persons Entitled to Notice.** From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Court prior to such date shall no longer be effective. No further notices, other than notice of entry of the Confirmation Order, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Court and served upon the Persons listed in Section 13.12 of the Plan.

**13.14. Notice of Entry of Confirmation Order.** Notice of Entry of the Confirmation Order shall be sufficient if a copy of a notice indicating that said order has been entered by the Court, without attaching said order, is mailed to those Persons who had filed a notice of

appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

**13.15. Extension of Dates; Consent.** To the extent any provision or definition of the Plan provides for an act or event to take place on a certain date, such date may be extended upon the written consent of the Plan Sponsor, if prior to the Effective Date, or by the Debtor or the Plan Sponsor as applicable if after the Effective Date. Any provision of the Plan which is conditioned upon, or subject to the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

**13.16. No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Plan Sponsor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

DATED:     July 10, 2014

Ridgewood Savings Bank

By: /s/ Victor Padilla
        Victor Padilla
        Assistant Vice President

CULLEN AND DYKMAN LLP
Attorneys for the Plan Sponsor

By:/s/ Bonnie Pollack
        Matthew G. Roseman, Esq.
        Bonnie L. Pollack, Esq.
        100 Quentin Roosevelt Boulevard
        Garden City, New York 11530
        (516)357-3700

31