CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.

Attorneys for Ridgewood Savings Bank

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:                                    Chapter 11
                                          Case No. 13-23894 (RDD)

Pjetr Realty, Inc.

                          Debtor.

-------------------------------------------------------------X

### AMENDED DISCLOSURE STATEMENT FOR
### CHAPTER 11 PLAN OF LIQUIDATION FILED BY
### RIDGEWOOD SAVINGS BANK AS PLAN SPONSOR

## IMPORTANT DATES

- Date by which Ballots must be received: August 25, 2014 at 5:00 p.m. Eastern Time.

- Date by which objections to Confirmation of the Plan must be filed and served: August 25, 2014 at 5:00 p.m. Eastern Time.

- Hearing on Confirmation of the Plan: September 4, 2014 at 10:00 a.m. Eastern Time.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 2

    A.    General ........................................................................................................... 2

    B.    Voting ........................................................................................................... 2

    C.    Confirmation Hearing ................................................................................... 4

    D.    Recommendations ........................................................................................ 5

II. HISTORICAL INFORMATION ................................................................................... 5

    A.    The Debtor's Business and Pre-Petition Activity ....................................... 5

III. THE REORGANIZATION CASE ............................................................................... 5

    A.    Overview ...................................................................................................... 5

    B.    Employment of the Debtor's Professionals ................................................ 6

    C.    Secured Claims/Cash Collateral ................................................................. 6

    D.    Claims Administration ................................................................................. 7

    E.    Estate Causes of Action ............................................................................... 8

    F.    Exclusivity ................................................................................................... 8

IV. SUMMARY OF THE PLAN ....................................................................................... 9

    A.    General ......................................................................................................... 9

    B.    Plan Overview/Property Sale ...................................................................... 9

    C.    Treatment of Claims and Interests ............................................................ 10

    D.    Treatment of Executory Contracts and Unexpired Leases ...................... 14

    E.    Distributions and Claims Resolution Provisions ...................................... 16

V. MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION ......... 18

    A.    Funding of the Plan ................................................................................... 18

    B.    Injunction ................................................................................................... 19

    C.    Release of Ridgewood ............................................................................... 19

    D.    Discharge ................................................................................................... 20

ii

E.      Exculpation ....................................................................................................20

F.      Post-Confirmation Jurisdiction of the Court...............................................21

VI. CONFIRMATION OF THE PLAN .......................................................................23

A.      Introduction...................................................................................................23

B.      Conditions to Confirmation and Effective Date ..........................................24

C.      Voting Procedures and Standards .................................................................24

D.      Acceptance.....................................................................................................27

E.      Confirmation and Consummation .................................................................28

VII. CERTAIN RISK FACTORS TO BE CONSIDERED...........................................33

A.      Risk That Distributions Will Be Less Than Estimated.................................34

B.      Bankruptcy Risks............................................................................................33

VIII. TAX CONSEQUENCES.......................................................................................35

IX. CONCLUSION ........................................................................................................35

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN. IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO CAREFULLY READ THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT THE PLAN.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION. THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## I. INTRODUCTION

### A.    General

Ridgewood Savings Bank ("Ridgewood" or the "Plan Sponsor") files this Amended

Disclosure Statement (the "Disclosure Statement") with respect to its Amended Chapter 11 Plan

of Liquidation dated July 10, 2014 (the "Plan").

This Disclosure Statement is provided pursuant to section 1125 of the Bankruptcy Code

to all the known creditors of the Debtor. The purpose of this Disclosure Statement is to provide

sufficient information to enable creditors who are entitled to vote to make an informed decision

on whether to accept or reject the Plan. **HOLDERS OF ALL CLAIMS OTHER THAN

RIDGEWOOD ARE BEING PAID IN FULL ON THE EFFECTIVE DATE OF THE

PLAN.**

Most words or phrases used in this Disclosure Statement shall have their usual and

customary meanings. Except as otherwise provided herein, capitalized terms not otherwise

defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan.

FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THE

DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.

**RIDGEWOOD IS THE PROPONENT OF THE PLAN AND SUPPORTS

CONFIRMATION OF THE PLAN. IT URGES CREDITORS TO VOTE TO ACCEPT

THE PLAN.**

### B.    Voting

With respect to Claims in Classes that are "impaired" (as defined below) under, but not

deemed to have rejected, the Plan, each holder of a Claim in such Classes will receive a copy of

this Disclosure Statement, a Ballot for the acceptance or rejection of the Plan, and other related

2

voting materials. Any creditor or Interest holder whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired."

Under the Plan, holders of Allowed Claims in Class 1 and holders of Interests in Class 4 are or may be impaired, and are therefore entitled to vote on the Plan (the "Voting Classes"). For a description of the Classes of Claims and Interests and their treatment under the Plan, see Section IV(C) below.

The date of entry of the Disclosure Statement Order is fixed as the "Voting Record Date." Only Persons who hold Claims on the Voting Record Date are entitled to receive a copy of this Disclosure Statement and all of the related materials. Only Persons who hold Claims on that date that are impaired under the Plan and are not deemed to reject the Plan are entitled to vote on the Plan.

In voting on the Plan, please use only the Ballot sent to you with this Disclosure Statement. Please complete and sign your Ballot and return it in the enclosed pre-addressed envelope to the Balloting Agent:

> Cullen and Dykman LLP
> Attn: Bonnie L. Pollack, Esq.
> 100 Quentin Roosevelt Boulevard
> Garden City, NY 11530

ALL PROPERLY COMPLETED BALLOTS RECEIVED BY THE BALLOTING AGENT PRIOR TO AUGUST 25, 2014 AT 5:00 P.M. EASTERN TIME (THE "VOTING DEADLINE") WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER EACH CLASS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN HAS ACCEPTED THE PLAN. ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY

COURT. ANY BALLOTS RECEIVED BY FACSIMILE WILL NOT BE ACCEPTED

UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT. The Balloting Agent

will prepare and file with the Court a certification of the results of the balloting with respect to

the Plan.

Your vote on the Plan is important. The Bankruptcy Code requires as a condition to

confirmation of a plan of reorganization that each class that is impaired under a plan vote to

accept such plan, unless the "cramdown" provisions of the Bankruptcy Code are employed. The

Plan Sponsor reserves its right to seek to "cramdown" the Plan on non-accepting Classes of

creditors and Interest holders. See Section VI below.

## C.    Confirmation Hearing

The Court will hold the Confirmation Hearing commencing at 10:00 a.m.(Eastern Time),

on September 4, 2014 at the United States Bankruptcy Court for the Southern District of New

York, 300 Quarropas Street, White Plains, New York 10601-4150, before the Honorable Robert

D. Drain, United States Bankruptcy Judge. The Confirmation Hearing may be adjourned from

time to time without further notice. At the Confirmation Hearing, the Court will (i) determine

whether the requisite vote has been obtained from the Voting Classes, (ii) hear and determine

objections, if any, to the Plan and to confirmation of the Plan that have not been previously

disposed of, (iii) determine whether the Plan meets the confirmation requirements of the

Bankruptcy Code, (iv) determine whether to confirm the Plan, and (v) grant such other and

further relief as the Court deems reasonable and appropriate.

Any objection to confirmation of the Plan must be in writing and filed with the Court and

served in a manner so as to be received on or before August 25, 2014 at 5:00 p.m. Eastern Time

by: (1) counsel to the Plan Sponsor, Cullen and Dykman LLP, 100 Quentin Roosevelt

4

Boulevard, Garden City, New York 11530, Attn: Bonnie L. Pollack, Esq.; and (2) the Office of

the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006,

New York, New York 10014.

## D.   Recommendations

**THE PLAN SPONSOR RECOMMENDS THAT ALL HOLDERS OF CLAIMS IN
THE VOTING CLASSES VOTE TO ACCEPT THE PLAN.**

## II. HISTORICAL INFORMATION

### A.   The Debtor's Business and Pre-Petition Activity

The Debtor is a corporation which has been in the business of owning and operating the

Property, a mixed use building in Pelham, New York, containing a restaurant and residential

apartments. The Debtor has asserted that it filed its chapter 11 bankruptcy case because the

restaurant experienced financial difficulties and closed and the property sat vacant for several

years with no prospective tenants in sight. After exhausting efforts to locating new tenants, the

Debtor's principal opened a restaurant herself together with a partner. According to the Debtor,

because of the vacancies at the Property, the Debtor was unable to pay Ridgewood's mortgage.

As a result of the Debtor's default, Ridgewood commenced a foreclosure action, obtained a

judgment of foreclosure and scheduled a foreclosure sale. The Debtor filed its Chapter 11 case

just prior to the sale, staying Ridgewood's ability to conduct the sale.

## III. THE REORGANIZATION CASE

### A.   Overview

As of the Petition Date, most actions and proceedings against the Debtor and acts to

obtain property from the Debtor were stayed under section 362 of the Bankruptcy Code. During

the administration of the Chapter 11 Case, the Debtor managed its business and affairs as a

5

debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to the control and supervision of the Court.

**B.      Employment of the Debtor's Professionals**

The Debtor retained the law firm of Penachio Malara LLP as its counsel in connection with the Chapter 11 Case. The Debtor did not employ accountants.

**C.      Secured Claims/Cash Collateral**

As set forth above, Ridgewood holds a mortgage against the Property. Ridgewood filed a claim in the Debtor's case on November 22, 2013 in the amount of $935,569.91, which is secured by the Property. There are no other Secured Claims against the Property, which is the Debtor's only asset.

At the time that the Debtor executed the note and mortgage against the Property in favor of Ridgewood, it also executed an Assignment of Leases and Rents granting Ridgewood a security interest in and to the rents received from the Debtor's operation of the Property. The Debtor was using such rents during the pendency of the case pursuant to an interim consent order entered by and between the Debtor and Ridgewood, signed by the Bankruptcy Court on February 10, 2014 (the "Interim Order"). Thereafter, the Debtor refused to execute a final consent order authorizing the use of such rents, but the Court permitted the continued use of such rents at a hearing held on March 24, 2014 in exchange for adequate protection payments being made by the Debtor.

The Interim Order required that the Debtor pay the Ridgewood Secured Claim in full on or before April 30, 2014. The Debtor failed to do so and is in default under that order.

6

## D.     Claims Administration

### 1.     Filing of Schedules and Statements

On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities and its Statement of Financial Affairs.

### 2.     Bar Date for Pre-Petition Claims

By order dated March 31, 2014, the Court established May 22, 2014 as the last day by which proofs of claims arising prior to the Petition Date must have been filed with the Court.

### 3.     Bar Date for Post-Petition Claims

*Administrative Claims*

**Under the Plan, all holders of Administrative Claims arising subsequent to November 18, 2013 and before the Confirmation Date (not including Fee Claims (described below)), and not paid prior to the Confirmation Date, must file with the Court proper requests for payment of such Administrative Claims, and serve copies upon the parties listed in Section 13.12 of the Plan, on or before the Administrative Bar Date.  Parties not complying with this deadline shall be forever barred from seeking payment of those Claims including, without limitation, against the Debtor, the Estate, the Plan Sponsor or their property, or commencing or continuing any action, employment of process or act to collect, offset or recover any such Administrative Claim.**  The notice of Confirmation of the Plan to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will include notice of the Administrative Bar Date.

*Fee Claims*

**All parties requesting compensation or reimbursement of Fee Claims pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered or expenses incurred on behalf of the Debtor or prior to the Confirmation Date must file applications with the Court, with copies to the parties listed in Section 13.12 of the Plan, on or before the Fee Claims Bar Date or shall be forever barred from seeking payment of those Fee Claims.** The notice of Confirmation of the Plan to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will include notice of the Fee Claims Bar Date.

**E.     Estate Causes of Action**

The Debtor shall have the option of commencing any Estate Causes of Action to recover the proceeds thereof for the Estate.  To the extent any such Causes of Action are commenced, the proceeds received in prosecution of such actions, net of any Allowed costs and expenses incurred in connection therewith, shall be distributed first, to Ridgewood to the extent that Ridgewood's collateral is used to make payments to Claimants in Classes 2 and 3 under the Plan and for payments of Allowed Administrative Claims, Fee Claims and Priority Tax Claims; and next, to the holders of Interests.

**F.     Exclusivity**

The Debtor's exclusive period during which only it could file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code expired on March 18, 2014.  The Debtor failed to file a plan by that date, and the Debtor's exclusive right to file a plan expired.  As a result, the Plan Sponsor filed its Plan.

## IV. SUMMARY OF THE PLAN

### A. General

SET FORTH IN THIS SECTION IS A SUMMARY OF CERTAIN OF THE
MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN
CONNECTION WITH CONFIRMATION OF THE PLAN. THIS SUMMARY
HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR
IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A
FULL AND CAREFUL READING OF THE PLAN. STATEMENTS REGARDING
PROJECTED AMOUNTS OF CLAIMS OR DISTRIBUTIONS (OR THE VALUE OF
SUCH DISTRIBUTIONS) ARE ESTIMATES BY THE DEBTOR BASED ON
AVAILABLE INFORMATION AND ARE NOT A REPRESENTATION AS TO THE
ACCURACY OF THESE AMOUNTS.

### B. Plan Overview/Property Sale

The Plan calls for the liquidation, rather than reorganization, of the Debtor, and is
premised upon the Sale of the Property subject to existing Tenant Leases including the right to
collect back rent thereunder. Once the Plan has been confirmed, the Plan Sponsor shall hire a
property manager/auctioneer to collect rents from the tenants of the Property, pay the operating
expenses associated with the Property and to market the Property as well as all Tenant Leases
and security deposits in connection therewith for sale, pursuant to the Bidding Procedures
annexed hereto as Exhibit "A", and shall select Transfer Counsel to take all steps necessary to
undertake such sale, including the execution of any documents in connection therewith on behalf
of the Debtor's Estate, to the extent Debtor's counsel elects not to perform the Transfer Services.

As set forth in the Bidding Procedures, the Sale shall occur within 60 days of the Confirmation Date. Since the Property is being sold pursuant to a plan of liquidation, the sale will be exempt from transfer taxes in accordance with section 1146 of the Bankruptcy Code.

Ridgewood believes that the value of the Property is $800,000 pursuant to an appraisal performed as of August 20, 2013. The costs and expenses incurred in connection with the Sale, including without limitation the auctioneer's costs and expenses and broker commissions if any, the costs and expenses of the Plan Sponsor in preparing and sponsoring the Plan and in soliciting votes thereon, and the costs and expenses incurred in connection with the Transfer Services, will be paid from the proceeds of the Sale. The net proceeds of the Sale, estimated to amount to approximately $700,000, will form the Distribution Fund for payments to creditors under the Plan as set forth in the Plan.

While Ridgewood would ordinarily be entitled to the entire Distribution Fund in payment of the Ridgewood Secured Claim, it has agreed as Plan Sponsor to carve out from the funds to which it is otherwise entitled, monies sufficient to pay all Allowed Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims and General Unsecured Claims.

## C.    Treatment of Claims and Interests

The Plan separates Claims and Interests into three (3) unclassified categories and four (4) Classes. A Claim or Interest is placed in a particular unclassified category or Class only to the extent that the Claim or Interest falls within the description of that category or Class. A Claim is also placed in a particular category or Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that category or Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims.

Fee Claims and Priority Tax Claims have not been classified and, subject to compliance with the

Administrative Bar Date and Fee Claims Bar Date set forth in Article III of the Plan, will be paid

in full in Cash to the extent such Claims are Allowed.   All other Claims and Interests have been

classified.  Each holder of a Claim or Interest should refer to Articles III, IV and V of the Plan

for a full description of the classification and treatment of Claims and Interests provided under

the Plan.

      1.    **Administrative Claims – Not Classified**

An Administrative Claim is an unsecured Claim, other than a Fee Claim, for payment of

costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy

Code, including, without limitation: (a) the actual, necessary costs and expenses incurred after

the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) all

fees and charges assessed against the Estate pursuant to section 1930 of title 28 of the United

States Code ("United States Trustee Fees").  Pursuant to the Debtor's most recent operating

report for the month of March, 2014, the Debtor is not delinquent in the payment of any post-

petition obligations.  The Plan Sponsor therefore believes that Administrative Claims will total

no more than the amounts due and owing for the United States Trustee Fees.

Each holder of an Allowed Administrative Claim shall be paid 100% of the Allowed

amount of such Administrative Claim from the Distribution Fund on or as soon as reasonably

practicable after Distribution Date, or receive such other less favorable treatment as may be

agreed upon by such holder and the Plan Sponsor.  Notwithstanding the immediately preceding

sentence, Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. §

1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees.

Estimated Percentage Recovery:  100% (see Section V(A) below).

## 2.    Fee Claims – Not Classified

Fee Claims are defined under the Plan as Claims for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case, which are subject to the approval by the Court after appropriate fee application.

Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive 100% of the Allowed amount of such Claim, from the Distribution Fund on or as soon as reasonably practicable after the Distribution Date, or receive such other less favorable treatment as may be agreed by such holder and the Plan Sponsor.

Penachio Malara LLP is the only Claimant within this class. It is not anticipated that fees to Debtor's counsel will amount more than $25,000.

Estimated Percentage Recovery: 100% (see Section V(A) below).

## 3.    Priority Tax Claims – Not Classified

A Priority Tax Claim is defined as a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code. Each holder of an Allowed Priority Tax Claim shall be paid 100% of the Allowed amount of such Claim from the Distribution Fund on or as soon as reasonably practicable after the Distribution Date, or receive such other less favorable treatment as may be agreed upon by the Claimant and the Plan Sponsor.

There were no Priority Tax Claims itemized in the Debtor's Schedules. One Priority Tax Claim was filed by the Bar Date in the amount of $1,090.40.

Estimated Percentage Recovery: 100% (See Section V(A) below).

## 4.    Ridgewood Secured Claim – Class 1 (Impaired-Entitled to Vote on Plan)

Class 1 under the Plan consists of the Ridgewood Secured Claim. The Ridgewood

12

Secured Claim shall be paid in full in Cash on or as soon as reasonably practicable after the Distribution Date, from the Distribution Fund remaining after payment of the Allowed Administrative Claims, Fee Claims and Priority Tax Claims. Upon receipt of the Distribution to which Ridgewood is entitled, Ridgewood's lien against the Property shall be deemed released and satisfied.

Estimated Percentage Recovery: 68% (see Section V(A) below).

5.    **Priority Non-Tax Claims – Class 2 (Unimpaired-Not Entitled to Vote on Plan)**

Each holder of an Allowed Priority Non-Tax Claim shall be paid in full in Cash on or as soon as reasonably practicable after the Distribution Date from the Distribution Fund remaining after payment of Allowed Administrative Claims, Fee Claims, Priority Tax Claims and the Ridgewood Secured Claim. To the extent there are insufficient amounts in the Distribution Fund to make such payments in full, the Plan Sponsor shall carve out and pay such Claims from the amounts otherwise due to be paid upon the Ridgewood Secured Claim. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Plan Sponsor.

There were no Priority Non-Tax Claims itemized in the Debtor's Schedules nor were any Priority Non-Tax Claims filed by the Bar Date. Accordingly, the Plan Sponsor does not believe that any Priority Non-Tax Claims exist in this case.

Estimated Percentage Recovery: N/A

6.    **General Unsecured Claims – Class 3 (Unimpaired-Not Entitled to Vote on Plan)**

Class 3 consists of any Claim that is not an Administrative Claim, Fee Claim, Priority Tax Claim, the Ridgewood Secured Claim, Priority Non-Tax Claim, Insider Claim or included within any other Class of Claims or Interests.

Each holder of an Allowed General Unsecured Claim shall be paid in full in Cash on or as soon as reasonably practicable after the Distribution Date from the Distribution Fund remaining after payment of Allowed Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims and the Ridgewood Secured Claim. To the extent there are insufficient amounts in the Distribution Fund to make such payments in full, the Plan Sponsor shall carve out and pay such Claims from the amounts otherwise due to be paid upon the Ridgewood Secured Claim. Notwithstanding the foregoing, the holder of an Allowed General Unsecured Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Plan Sponsor.

The Debtor's schedules listed one (1) General Unsecured Claim in an unliquidated amount. Additional General Unsecured Claims were filed against the Debtor by the Bar Date in the total amount of $27,671.59.

Estimated Percentage Recovery: 100% (see Section V(A) below).

### 7.      Interests – Class 4 (Impaired-Entitled to Vote on Plan)

Class 4 includes equity securities, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor, including but not limited to stock in the Debtor. Insider Claims shall also be deemed to constitute and be treated as Interests.

The holders of Interests in Class 4 shall receive the remainder of the Distribution Fund after payment of all Allowed Claims.

### D.      Treatment of Executory Contracts and Unexpired Leases

#### 1.      Tenant Leases.

As set forth above, the Property will be sold subject to existing Tenant Leases including the right to collect back rent thereunder. Tenant Leases include without limitation the lease of

the restaurant operated at the Property.  Such Leases are neither being assumed nor rejected by
the Plan.

2.   **Rejection of Executory Contracts and Other Unexpired Leases**

Except as to Tenant Leases or as otherwise provided in the Plan, or in any contract,
instrument, release or other agreement or document entered into subsequent to the Petition Date
or in connection with the Plan, each of the executory contracts or unexpired leases to which the
Debtor was a party on the Petition Date, to the extent such contracts or leases are executory
contracts or unexpired leases, shall, on the Confirmation Date but subject to the closing of the
Sale, be rejected unless such contract or lease (a) a Tenant Lease; (b) is the subject of a pending
motion to assume or reject or (c) shall have expired or terminated pursuant to its own terms;
provided, however, that rejection pursuant to Article IX of the Plan shall not constitute an
admission that any such contracts or leases are in fact executory contracts or unexpired leases or
that the Debtor had any liability thereunder.  The Confirmation Order shall constitute an order of
the Court approving the rejections described in Article IX of the Plan, pursuant to section 365 of
the Bankruptcy Code, as of the Confirmation Date, but subject to the closing of the Sale.

3.   **Bar Date for Rejection Damages**

**If the rejection of an executory contract or unexpired lease pursuant to Article IX of
the Plan gives rise to a Claim by the other party or parties to such contract or lease, such
Claim shall be forever barred and shall not be enforceable against the Debtor, the Debtor's
Estate, the Plan Sponsor or their property unless the party files an original proof of Claim
(with supporting documentation) with the Bankruptcy Court within thirty (30) days after
entry of the Confirmation Order.**

15

There shall be no restriction on the rights of the Debtor and/or the Plan Sponsor to object to any Claims relating to the rejection of executory contracts or unexpired leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

Any Allowed Claim arising from the rejection of an executory contract or unexpired lease shall constitute a Class 3 General Unsecured Claim.

## E.    Distributions and Claims Resolution Provisions

### 1.    Objections to Claims

From and after the Effective Date, the Debtor and the Plan Sponsor shall have the right to object to the allowance of any Claim, and may file with the Court any appropriate motion with respect thereto within 60 days of the Effective Date. To the extent the Plan Sponsor elects to object to any Claim, the Debtor shall cooperate with the Plan Sponsor and provide any documents or information to the Plan Sponsor as may be necessary or desirable to assist in such Claim objections.

### 2.    Claims Filed After Bar Date.

Any Claim filed after any applicable Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court. Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules. A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor, the Plan Sponsor and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of

16

the Plan Sponsor.

### 3.    Withholding Taxes and Expenses of Distribution

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Plan Sponsor shall be authorized to withhold Distribution on such Claims until the requisite information is received.

### 4.    Disputed Payment

Notwithstanding anything to the contrary in the Plan, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any time before an otherwise applicable Distribution is issued, the Plan Sponsor has taken action to recover on any causes of action or defenses against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense is resolved by Final Order or agreement of the Plan Sponsor.

Additionally, if any dispute arises as to the identity of a holder of an Allowed Claim who is entitled to receive any Distribution, the Plan Sponsor may, in lieu of making such Distribution to such Person, reserve for such Distribution until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

### 5.    Setoffs and Recoupment

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Plan Sponsor may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account

of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to effect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Plan Sponsor, nor any provision of the Plan shall constitute a waiver or release by the Plan Sponsor of any such claims, rights and causes of action that the Debtor may possess against such holder. To the extent the Plan Sponsor fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to such creditor pursuant to the Plan, the Plan Sponsor, if successful in asserting such claim, shall be entitled to full recovery against such creditor. The Plan Sponsor may seek periodic Court approval for any such setoff or recoupment.

### 6.      Interest on Claims.

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post-petition and post-confirmation interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## V. MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION

### A.      Funding of the Plan

The following table sets forth a summary of the sources of estimated proceeds that will be available for distribution to creditors and the application thereof:

| | | |
|---|---|---|
| Sources of Estimated Proceeds | | |
| Sale (Net Proceeds) | $700,000 | |
| Application of Estimated Proceeds | | |
| Estimated U.S. Trustee Fees | $5,000 | (100%) |

| | | |
|---|---|---|
| Estimated Fee Claims | $25,000 | (100 %) |
| Priority Non-Tax Claims | $0.00 | (N/A) |
| Priority Tax Claims | $1,090.40 | (100%) |
| General Unsecured Claims | $27,671.59 | (100%) |
| Ridgewood Secured Claim (Subject to increase as a result of claim objections) | $641,238.01 | (68%) |

THE AMOUNTS CONTAINED IN THE FOREGOING TABLE REPRESENT ESTIMATES BASED ON CURRENT INFORMATION ONLY. ALTHOUGH THE PLAN SPONSOR BELIEVES THAT THE ESTIMATED PERCENTAGE RECOVERIES ARE REASONABLE, NO REPRESENTATION CAN BE OR IS BEING MADE WITH RESPECT TO WHETHER THE ESTIMATED PERCENTAGE RECOVERIES SHOWN WILL BE REALIZED BY THE HOLDER OF AN ALLOWED CLAIM IN A PARTICULAR CLASS. THE ACTUAL RECOVERIES UNDER THE PLAN WILL DEPEND UPON A VARIETY OF FACTORS INCLUDING, BUT NOT LIMITED TO, THE AMOUNT RECEIVED FROM THE SALE.

## B.   Injunction

The Confirmation Order will provide, among other things, that all Persons who have held, hold or may hold Claims against or Interests in the Debtor are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from (a) taking any action against, or interfering in any respect with, the Cash or property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (b) asserting any right of setoff or recoupment of any kind, directly or indirectly, against

19

any obligation due the Estate, except as contemplated or allowed by the Plan; and (c) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.

C.    **Release of Ridgewood**

The Debtor shall be permanently enjoined from and after the Confirmation Date from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against Ridgewood based on any claim or cause of action against Ridgewood which arose prior to the Confirmation Date.

D.    **Discharge**

The Debtor is not entitled to, and will not receive, a discharge since the Plan is a liquidating plan and the Debtor will not be engaging in business after consummation of the Plan.

E.    **Exculpation**

In accordance with Section 1125(e) of the Bankruptcy Code, any person that solicits acceptance or rejection of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code and Rules, is not liable, on account of such solicitation, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of a plan.  Nothing in this section shall (i) be construed as a release of such person's fraud, gross negligence, malpractice or willful misconduct with respect to the matters set forth in this section V(E), or (ii) limit the liability of the Debtor's or Plan Sponsor's professionals to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

F.      **Post-Confirmation Jurisdiction of the Court**

Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, the
Court will retain such jurisdiction as is legally permissible, including, without limitation, for the
following purposes:

1.      To determine the allowability, classification, or priority of Claims upon objection
by the Debtor or Plan Sponsor, and the validity, extent, priority and nonavoidability of
consensual and nonconsensual liens and other encumbrances;

2.      To issue injunctions or take such other actions or make such other orders as may
be necessary or appropriate to restrain interference with the Plan or its execution or
implementation by any Person, to construe and to take any other action to enforce and execute
the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be
necessary for the implementation, execution, performance and consummation of the Plan and all
matters referred to herein, and to determine all matters that may be pending before the Court in
the Chapter 11 Case on or before the Effective Date with respect to any Person;

3.      To protect the property of the Estate from claims against, or interference with,
such property, including actions to quiet or otherwise clear title to such property or to resolve
any dispute concerning liens, security interest or encumbrances on any property of the Estate;

4.      To determine any and all applications for allowance of Fee Claims;

5.      To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative
Claims or any other request for payment of claims or expenses entitled to priority under section
507(a) of the Bankruptcy Code;

6.      To determine any dispute relating the Sale, the Bidding Procedures, and

21

confirmation of the Sale and/or any other matter that in any way relates to the foregoing;

7.      To determine any and all motions related to the rejection, assumption or
assignment of executory contracts or unexpired leases, or to determine any motion to reject an
executory contract or unexpired lease pursuant to the Plan;

8.      To determine all Estate Causes of Action, applications, motions, adversary
proceedings, contested matters, actions, and any other litigated matters instituted in and prior to
the closing of the Chapter 11 Case, including any remands;

9.      To enter a Final Order closing the Chapter 11 Case;

10.      To modify the Plan under section 1127 of the Bankruptcy Code, remedy any
defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order
so as to carry out their intent and purposes;

11.      To issue such orders in aid of consummation of the Plan and the Confirmation
Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person,
to the fullest extent authorized by the Bankruptcy Code;

12.      To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

13.      To enter and implement such orders as may be appropriate in the event the
Confirmation Order is for any reason stayed, revoked, modified or vacated;

14.      To resolve any dispute arising under or related to the implementation, execution,
consummation or interpretation of the Plan, and the making of Distributions thereunder;

15.      To resolve any disputes concerning whether a Person had sufficient notice of the
Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or
the Confirmation Hearing or for any other purpose;

16.      To resolve any dispute or matter arising under or in connection with any order of

the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

17.    To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

18.    To approve any Distributions, or objections thereto, under the Plan;

19.    To approve any Claims settlement entered into or offset exercised by the Plan Sponsor; and

20.    To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code.

## VI. CONFIRMATION OF THE PLAN

### A.    Introduction

The Bankruptcy Code requires the Bankruptcy Court to determine whether a plan of reorganization complies with the technical requirements of chapter 11 of the Bankruptcy Code. It further requires that a plan proponent's disclosures concerning such plan have been adequate and have included information concerning all payments made or promised in connection with the plan.

To confirm the Plan, the Court must find that all of these and certain other requirements have been met. Thus, even if the requisite vote is achieved for each Class of impaired Claims, the Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan. Some of these statutory requirements are discussed below.

## B. Conditions to Confirmation and Effective Date

The Plan may not be confirmed unless the Disclosure Statement has been approved by
the Court. The Effective Date may not occur, and thus the Plan will not become effective, unless
the Confirmation Order becomes a Final Order.

If the Plan is confirmed, the Plan Sponsor expects the Effective Date to occur not later
than fourteen (14) days after the Confirmation Date.

## C. Voting Procedures and Standards

Holders of Claims in Classes that are "impaired" under the Plan (but not deemed to reject
the Plan by virtue of receiving no Distributions thereunder) will receive a Ballot with this
Disclosure Statement for the acceptance or rejection of the Plan. Any Claim or Interest whose
legal, contractual or equitable rights are altered, modified or changed by the proposed treatment
under the Plan or whose treatment under the Plan is not provided for in section 1124 of the
Bankruptcy Code is considered "impaired." Instructions on how to complete a Ballot and the
deadline for voting on the Plan are contained in the solicitation materials accompanying this
Disclosure Statement and the Plan.

The following procedures for allowance of Claims for purposes of voting on the Plan
shall apply to votes upon the Plan:

(a)     Disputed Filed Claims. With regard to a Claim that is the subject of an
objection filed at least twenty (20) days prior to the Ballot Deadline, such Claim will be
disallowed provisionally for voting purposes, except to the extent and in the manner that (i) the
Plan Sponsor agrees that the Claim should be allowed for voting purposes in its objection to such
Claim; or (ii) such Claim is allowed temporarily for voting purposes in accordance with

24

Bankruptcy Rule 3018.

(b)     Claims Estimated for Voting Purposes. With respect to a Claim that has

been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the

amount and classification of such Claim will be that set by the Bankruptcy Court.

(c)     Wholly Unliquidated Claims. A Claim recorded in the Schedules or in the

Clerk's records as wholly unliquidated, contingent and/or undetermined will be accorded one

vote, valued at one dollar, for the purposes of section 1126(c) of the Bankruptcy Code, unless the

Claim is disputed as set forth in (a) above.

(d)     Late Claims. With respect to a Claim as to which a proof of claim has not

been timely filed (i.e., was filed after the Bar Date), the voting amount of such Claim (subject to

any applicable limitations set forth below) will be equal to the amount listed, if any, in respect of

such Claim in the Schedules, to the extent such Claim is not listed as contingent, unliquidated, or

disputed, unless the Claim is disputed as set forth in (a) above. If such Claim is either not listed

in the Schedules, or is listed as contingent, unliquidated or disputed, then the Claim respecting

such proof of claim will be disallowed provisionally for voting purposes.

(e)     Duplicate Claim. A creditor will not be entitled to vote its Claim to the

extent such Claim duplicates or has been superseded by another Claim of such creditor.

(f)     Undisputed Scheduled Claims. With respect to a Claim that appears on

the Schedules as undisputed, noncontingent and liquidated, and as to which no objection has

been filed at least twenty (20) days prior to the Ballot Deadline, the amount and classification of

such Claim shall be that specified in the Schedules unless superseded by an undisputed proof of

claim.

(g)     Court Determined Claims. With respect to a Claim for which an order has been entered reducing, reclassifying or allowing, the amount and classification of the Claim shall be that specified in such order.

The Ballots of creditors will be tabulated in accordance with the following procedures:

(i)     For the purpose of voting on the Plan, the Balloting Agent will be deemed to be in constructive receipt of any Ballot timely delivered to the address set forth above as designated for the receipt of Ballots cast on the Plan;

(ii)     Any Ballot received by the Balloting Agent after the Ballot Deadline shall not be counted;

(iii)     Pursuant to Bankruptcy Rule 3018(a), whenever a holder of a Claim submits more than one Ballot voting the same Claim prior to the Ballot Deadline, the last such Ballot sent and received shall count unless such holder has sufficient cause within the meaning of Bankruptcy Rule 3018(a) to submit, or the Debtor consents to the submission of, a superseding Ballot;

(iv)     If a Ballot does not include a Claim amount, the Ballot shall be deemed filed in the amount of a filed Claim, and if no Claim has been filed, in the amount of the Claim as specified in the Schedules, as long as the Claim is listed in the Schedules as undisputed, non-contingent or liquidated; otherwise, the Ballot shall not be counted.

(v)     If a holder of a Claim casts simultaneous duplicative Ballots voted inconsistently, then such Ballots shall not be counted;

(vi)     The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed;

(vii)     Any Ballot that is not signed shall not be counted;

26

(viii)   Any Ballot received timely by the Balloting Agent by electronic communication (i.e. email) shall be counted but signed Ballots received by the Balloting Agent by facsimile will not be counted;

(ix)   A holder of a Claim must vote all of its Claims within a particular Class under the Plan either to accept or reject the Plan and may not split its vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan, or that indicates both a vote for and against the Plan, will not be counted; and

(x)   Any Ballot that is timely received and executed but does not indicate whether the holder of the relevant Claim is voting for or against the Plan shall not be counted.

IF A BALLOT IS DAMAGED OR LOST OR IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE BALLOTING AGENT.

A VOTE MAY BE DISREGARDED IF THE COURT DETERMINES, AFTER NOTICE AND A HEARING, THAT SUCH ACCEPTANCE OR REJECTION WAS NOT MADE OR SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE WITH THE PROVISIONS OF THE BANKRUPTCY CODE.

Any impaired Class of Claims that fails to achieve the requisite "accepted" vote will be deemed to have rejected the Plan.

D.   **Acceptance**

The Bankruptcy Code defines acceptance of a plan by an impaired Class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of Claims of that Class that actually vote. Acceptance of the Plan need only be solicited from

holders of Claims whose Claims are "impaired" and not deemed to have rejected the Plan.
Except in the context of a "cram down" (i.e., confirmation of a plan that has not been accepted
by all impaired classes), as a condition to confirmation of the Plan, the Bankruptcy Code requires
that, with certain exceptions, each Class of impaired Claims accepts the Plan.

The Plan is predicated on the Voting Classes voting to accept the Plan. In the event the
requisite vote is not obtained, the Plan Sponsor has the right, assuming that at least one Class of
impaired Claims has accepted the Plan, to request confirmation of the Plan pursuant to
section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan
notwithstanding rejection by one or more Classes of impaired Claims or impaired Interests if the
Bankruptcy Court finds that the plan does not discriminate unfairly and is "fair and equitable"
with respect to the rejecting class or classes. This procedure is commonly referred to in
bankruptcy parlance as "cram down." If the Voting Classes vote to reject the Plan, the Plan
Sponsor will seek a cram down of any such Class at the Confirmation Hearing.

## E.     Confirmation and Consummation

At the Confirmation Hearing, the Court will determine whether the requirements of
section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section
1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponents of the plan have complied with the applicable provisions of the
  Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponents under the plan for services or
  for costs and expenses in, or in connection with, the chapter 11 case, or in
  connection with the plan and incident to the case, has been approved by, or is
  subject to the approval of, the court as reasonable.

- The proponents have disclosed the identity and affiliations of any individual

28

proposed to serve, after confirmation of the plan, as a director, officer, or voting
trustee of the debtor, an affiliate of the debtor participating in the plan with the
debtor, or a successor to the debtor under the plan. The appointment to, or
continuance in, such office of such individual, must be consistent with the
interests of creditors and equity security holders and with public policy and the
proponents must have disclosed the identity of any insider that the reorganized
debtors will employ or retain, and the nature of any compensation for such
insider.

- With respect to each class of impaired claims or interests, either each holder of a
claim or interest of such class has accepted the plan, or will receive or retain
under the plan on account of such claim or interest, property of a value, as of the
effective date of the plan, that is not less than the amount that such holder would
receive or retain if the debtor were liquidated on such date under chapter 7 of the
Bankruptcy Code.

- Each class of claims or interests has either accepted the plan or is not impaired
under the plan.

- Except to the extent that the holder of a particular claim has agreed to a different
treatment of such claim, the plan provides that allowed administrative expenses
and priority claims (other than tax claims) will be paid in full on the effective date
and that priority tax claims will receive on account of such claims deferred cash
payments, over a period not exceeding five (5) years after the order for relief in a
case, of a value, as of the effective date, equal to the allowed amount of such
claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has
accepted the plan, determined without including any acceptance of the plan by
any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the
need for further financial reorganization, of the debtor or any successor to the
debtor under the plan (unless, as here, such liquidation or reorganization is
proposed in the plan).

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the

Bankruptcy Code and the "cram down" of Classes not receiving any Distribution under the Plan,

the Plan Sponsor believes that (i) the Plan satisfies all of the statutory requirements of chapter 11

of the Bankruptcy Code, (ii) the Plan Sponsor has complied or will have complied with all of the

requirements of chapter 11, and (iii) the Plan has been proposed in good faith.

Set forth below is a more detailed summary of the relevant statutory confirmation

29

requirements.

## 1. Best Interests of Holders of Claims and Interests

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an allowed claim or interest of each impaired class of claims or interests will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

This is a liquidating Plan, which is expressly permitted by the Bankruptcy Code. Creditors should also understand that the best interests tests is hypothetical in part, that is, a Court must conclude that there is a reasonable likelihood that if the case were converted to Chapter 7, creditors would receive less than under this Plan.

If this case was converted to Chapter 7, no creditors other than Ridgewood would be paid from a sale of the Property, so all creditors are benefiting by this Plan as opposed to conversion to Chapter 7. Moreover, even if creditors would receive a distribution in Chapter 7, it would result in even more administrative expenses potentially reducing recoveries to unsecured creditors. A Chapter 7 trustee would be appointed who would be entitled to commissions on all monies disbursed by or turned over to him. A trustee would also likely hire his own professionals who would engage in due diligence on the trustee's behalf. These added costs would result in less of a distribution in Chapter 7 than proposed by the Plan.

## 2. Financial Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the

30

Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the plan. The Plan is a liquidating plan of reorganization. Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

### 3.    Acceptance by Impaired Classes

A class is "impaired" under a plan unless, with respect to each claim or interest in such class, the plan: (i) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of such claim or interest; or (ii) notwithstanding any contractual provision or applicable law which entitles the holder of such claim or interest to demand or receive accelerated payment on account of a default, cures any default, reinstates the original maturity of the obligation, compensates the holder for any damages incurred as a result of reasonable reliance on such provision or law and does not otherwise alter the legal, equitable or contractual rights of such holder based upon such claim or interest. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

### 4.    Cram Down

**THE PLAN SPONSOR RESERVES THE RIGHT TO CRAM DOWN THIS PLAN AGAINST NON-ACCEPTING CLASSES OF HOLDERS OF CLAIMS OR INTERESTS.**

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code. Under the "cram down" provisions, upon the request of a plan proponent the Bankruptcy Court will confirm a plan despite the lack of acceptance by an impaired class or classes if the Bankruptcy Court finds that (i) the plan does not discriminate

31

unfairly with respect to each non-accepting impaired class, (ii) the plan is fair and equitable with respect to each non-accepting impaired class, and (iii) at least one impaired class has accepted the plan. These standards ensure that holders of junior interests, such as stockholders, cannot retain any interest in the debtor under a plan of reorganization that has been rejected by a senior class of impaired claims or interests unless such impaired claims or interests are paid in full.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law. A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan. By establishing separate Classes for the holders of each type of Claim and by treating each holder of a Claim in each Class identically, the Plan has been structured so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims or interests. In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before any junior class may receive anything under the plan. In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receives more than payment in full on its claims.

With respect to a class of unsecured claims that does not accept the Plan, either (i) each holder of an unsecured claim in the dissenting class receives or retains under such plan property of a value equal to the allowed amount of its unsecured claim, or (ii) the holders of claims or

holders of interests that are junior to the claims of the holders of such unsecured claims will not receive or retain any property under the plan. Additionally, the holders of claims that are senior to the claims of the dissenting class of unsecured claims receive no more than payment in full on their claims under the plan. The Plan is designed to satisfy these standards.

If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more of Classes of impaired Claims or Interests have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Plan Sponsor will request that the Bankruptcy Court confirm the Plan over the dissenting votes of such Classes in accordance with section 1129(b) of the Bankruptcy Code. The Plan Sponsor believes that the Plan satisfies the "cram down" requirements of the Bankruptcy Code. The Plan Sponsor may seek confirmation of the Plan over the objection of dissenting Classes, as well as over the objection of individual holders of Claims or Interests who are members of an accepting Class.

### 5.     Classification of Claims and Interests

The Plan Sponsor believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan of reorganization place each claim or interest into a class with other claims or interests which are "substantially similar."

## VII. CERTAIN RISK FACTORS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS

## INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### A. Risk That Distributions Will Be Less Than Estimated

The projected distributions and recoveries set forth in this Disclosure Statement are based on the Plan Sponsor's estimate of Allowed Claims and Cash available for Distribution. There can be no assurance that the estimates will prove accurate.

### B. Bankruptcy Risks

#### 1. Objection to Classifications

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan Sponsor believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Court would reach the same conclusion.

#### 2. Risk of Non-Confirmation of the Plan

Even if the Voting Classes accept the Plan, the Plan might not be confirmed by the Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization unless, as here, such liquidation is proposed in the plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Plan Sponsor believes that the Plan satisfies all the requirements for confirmation of a liquidating plan of reorganization under the Bankruptcy Code. There can be no assurance, however, that the Court would also conclude that the requirements for confirmation of the Plan

34

have been satisfied.

## VIII.  TAX CONSEQUENCES

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR INTERESTS MAY
VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.  NO
RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE
SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO
OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR
WITH RESPECT THERETO.

NOTHING HEREIN CONSTITUTES TAX ADVICE OR A TAX OPINION
CONCERNING THE MATTERS DESCRIBED HEREIN.  ACCORDINGLY, EACH HOLDER
OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX
ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX
CONSEQUENCES OF THE PLAN.

## IX.  CONCLUSION

The Plan Sponsor believes that confirmation and implementation of the Plan will provide
each creditor with a greater recovery than it would receive if the Debtor were to liquidate and
distribute its assets under chapter 7, in which case there would likely be a delay in making
distributions to creditors and creditors would likely receive smaller distributions.  Thus, the Plan
Sponsor recommends confirmation and implementation of the Plan as the best possible outcome
for creditors.

The Plan Sponsor urges holders of impaired Claims to vote to accept the Plan and to

evidence such acceptance by returning their Ballots so they will be received by the Ballot

Deadline.

DATED: July 10, 2014                    RIDGEWOOD SAVINGS BANK


                                        By: /s/ Victor Padilla
                                        Victor Padilla
                                        Assistant Vice President


                                        CULLEN AND DYKMAN LLP
                                        Attorneys for the Plan Sponsor


                                        By: /s/ Bonnie Pollack
                                        Matthew G. Roseman, Esq.
                                        Bonnie L. Pollack, Esq.
                                        100 Quentin Roosevelt Boulevard
                                        Garden City, New York 11530
                                        (516) 357-3700

EXHIBIT A

## BIDDING PROCEDURES

The Sale[1] shall be conducted by auction in accordance with the following bidding procedures:

(a)  **"AS IS, WHERE IS"**: Any bid shall be a bid to purchase, by assumption and assignment under section 365 of the Bankruptcy Code, the Property as well as all Tenant Leases and security deposits in connection therewith, "AS IS, WHERE IS", free and clear of all liens, encumbrances, interests and claims, whether known or unknown, choate or inchoate, pursuant to section 363(f) of the Bankruptcy Code. Neither the Plan Sponsor nor the Debtor makes any representations or warranties whatsoever.

(b)  **Qualification to Bid**: To qualify to participate in the auction, a bidder must (i) present at the auction registration a cashier's or certified check in the amount of $100,000 made payable to an escrowee, title company or as directed by the Plan Sponsor (the "Deposit"), and (ii) provide such financial and other information that will allow for applicable parties to make a determination as to the bidder's financial ability to consummate the purchase of the Property.

(c)  **Qualified Bidders**: Any party that qualifies will be a "Qualified Bidder." Only Qualified Bidders will be permitted to participate in bidding for the Property at the auction. The auctioneer shall reasonably determine in good faith, whether any bidder is a Qualified Bidder. Ridgewood Savings Bank ("Ridgewood"), the holder of the first mortgage on the Property, is deemed a Qualified Bidder and has the right, but not the obligation to credit bid the amount of the Ridgewood Secured Claim, without complying with the qualification requirements noted above.

(d)  **No Contingent Bids**: Bids may not be subject to financing, due diligence, or any other contingency.

(e)  **The Auction**: The auction shall take place within 60 days of the entry of the Confirmation Order. The Plan Sponsor shall file with the Bankruptcy Court and serve on all creditors and parties in interest a notice of the time and place of the auction, which notice shall be filed and served at least four (4) weeks prior to the scheduled auction.

(f)  **Appearance at Auction**: All Qualified Bidders must appear in person or via telephone or through a duly authorized representative or by submitting a bid prior to the auction to be entered into the bidding at the auction.

(g)  **The Auction Format**: All bidding is open and public. To bid during the auction, a bidder need only raise their hand, shout out their bid or instruct an auctioneer's

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed in the Chapter 11 Plan of Liquidation filed by Ridgewood Savings Bank as Plan Sponsor.

bidder assistant to call out a bid on behalf of the bidder.

(h) **Bidding at the Auction**:

    (i)    After the initial opening bid, all subsequent competing bids shall be in increments at the direction and discretion of the auctioneer. No bid shall be of the same amount as any existing bid.

    (ii)    The auctioneer reserves the right to reopen the bidding and re-bid the Property, in the event of a bidding dispute occurring at the auction.

    (iii)    The auctioneer reserves the right to determine with whom the bid is placed in the event of a tie or dispute.

    (iv)    Oral and written announcements made by the auctioneer before the commencement of the bidding take precedent over any distributed materials.

    (v)    Bids made after the bidding is concluded at the auction will not be considered.

(i) **Credit Bid**: Ridgewood shall be permitted to credit bid the amount of the Ridgewood Secured Claim pursuant to section 363(k) of the Bankruptcy Code. Sperry is deemed a Qualified Bidder and shall be exempt from the qualification requirements, as set forth above, so long as such credit bid otherwise constitutes a qualified bid.

(j) **Conduct Of The Auction**: Neither the Debtor, its agents nor auctioneer are permitted to bid at the auction. However, secured creditors have the right but not the obligation to bid at the auction. The auctioneer reserves the right to refuse admittance to or expel anyone from the auction premises for interference with auction activities, nuisance, canvassing, soliciting, or other reasons deemed necessary by the auctioneer. If any disputes should arise following the auction, the auctioneer's records shall be conclusive in all respects.

(k) **Absolute Offerings**: The final high bids that are offered on the Property are absolute, without reserve, will be accepted at the time and place of the auction.

(l) **Additional Requirements Of The Successful Bidder and the Backup Bidder**: The successful bidder as well as the next highest "back up" bidder will also be required to sign an agreement of assumption and the escrowee shall deposit their initial down-payment. The initial down payments MUST be increased to 10% of the total purchase price by cashier's or certified check, if applicable, either at the auction or within two (2) business days following the auction. No third party checks will be accepted. The successful bidder and the back up bidder may also be asked to sign a statement that the bidder has conducted due diligence with

2